UNITED STATES of America,
Appellee,

v.

Leo Junior VALEZ, Appellant.

No. 19850.

United States Court of Appeals,
Eighth Circuit.

Sept. 10, 1970.

Louis Bialick, Minneapolis, Minn., for appellant, and filed brief.

J. Earl Cudd, Asst. U. S. Atty., Minneapolis, Minn., for appellee, and filed brief; Rober G. Renner, U. S. Atty., on the brief.

Before VOGEL, Senior Circuit Judge, GIBSON and BRIGHT, Circuit Judges.

GIBSON, Circuit Judge.

Defendant Leo Junior Valez was indicted for robbing the Midwest Federal Savings & Loan Association (a federally insured institution) on July 6, 1967, in Minneapolis, Minnesota, and for assaulting and placing in jeopardy the lives of three employees of that association by the use of a hand gun in the commission

of the robbery in violation of 18 U.S.C. § 2113(a) and (d). He was found guilty by a jury and was sentenced, upon a judgment of conviction being duly entered, to 20 years imprisonment.

On appeal defendant makes two primary contentions. First, he contends his right to a fair trial was violated because three eye witnesses who made in-court identifications of him had earlier identified him at a lineup at which his counsel was not present. It is asserted since there is no evidence in the record that defendant waived his right to counsel, or that anyone was present to ensure the lineup procedure was fair and impartial, or even that defendant's attorney was notified of the proposed lineup, these three in-court identifications should not have been admitted into evidence. Secondly, defendant argues assuming *arguendo* the above-challenged in-court identifications were properly admitted into evidence, there is not sufficient evidence to sustain his conviction.

■ The Government argues defendant failed to challenge the validity of the pretrial lineup by either a motion to suppress, or by objection during trial or by a motion for new trial, and thus cannot raise this question on appeal, citing Petschl v. United States, 369 F.2d 769 (8th Cir. 1966). The Government's position on this procedural issue is well taken. We recognize the rule against considering errors not properly raised in the trial court and thus will only consider defendant's contention on the lineup controversy in light of the plain error rule. Rule 52(b), Fed.R.Crim.P. However, in attempting to proceed under the plain error rule we find that the record is inadequate to determine whether the alleged error was obvious and highly prejudicial to the defendant.

The defendant did not move to suppress the identification testimony prior to trial. At trial, the first witness called by the prosecution, Barbara Korman, on direct examination identified defendant as one of the robbers and testified on cross-examination that she had

viewed defendant in a lineup three or four weeks prior to trial and that she had identified him from photographs exhibited to her by the FBI (apparently prior to the lineup). The second witness called by the prosecution, Darlene L. Moodie, also identified defendant as one of the robbers on direct examination and testified on cross-examination that she had not been present at any lineups; however, on redirect examination she testified that she had been shown photographs on three different occasions by the FBI and that she identified defendant from the photographs exhibited on the third occasion. Ardell Sundland, the third witness called by the prosecution, testified on direct examination that there was a "very close resemblance" between one of the robbers and defendant but admitted on cross-examination that she wasn't absolutely positive defendant was the robber. On redirect examination Sundland testified that she had attended a lineup in which she identified defendant and the other robber. Joy Ann Totten, the sixth witness called by the prosecution, testified on direct examination that defendant resembled one of the robbers very much and on cross-examination that he looked more like him than anybody else she had seen. Totten also testified on cross-examination that she had identified defendant both at a lineup a month to a month and a half prior to trial and from photographs exhibited to her by the FBI prior to the lineup.

At no time did defense counsel object to the identification by any of the witnesses on direct examination. In addition, counsel did not object or move to suppress the identification evidence after the lineup information had been elicited on cross-examination and redirect examination and did not make a motion for a new trial after the verdict was returned. Because defense counsel did not challenge the in-court identifications of Valez, no hearing was held to elucidate the facts surrounding the pretrial identifications at the lineup. We do not know if these identifications were made

in the course of a proper lineup, if defendant had counsel present, or if defendant waived his right to counsel. The record before us is completely barren on these questions because defense counsel failed to bring out the crucial facts on cross-examination. However, one crucial fact—that defendant's own counsel was not present at the lineups—is not disputed on appeal by the Government.

While the Government's brief does not discuss the facts concerning the lineup or the substantive constitutional law involved, at oral argument Government counsel stated that defendant's counsel, although twice notified, was not present at the lineup but that defendant was represented by counsel for co-defendant Michael Scarpellino with the approval of Valez's initial counsel, Peter J. Hiniker. The Government claims that on January 17, 1969, the United States attorney wrote Hiniker suggesting three possible days for a lineup; when nothing was agreed upon, a second letter was written on February 11, 1969, to Hiniker suggesting two other days for a lineup. According to the Government, Hiniker replied that, while he would not be able to attend a lineup conducted at either of the suggested times, co-defendant Scarpellino's attorney would be present at the lineup and would adequately represent defendant Valez.

Hiniker withdrew from the defense of Valez, for reasons which do not appear of record, shortly thereafter. Consequently, his version of what took place prior to the lineup is unknown to us. We do know that counsel was appointed for Valez on March 13, 1969, and that Hiniker apparently did not cooperate with appointed counsel (as of the day the case was called for trial, April 15, 1969, Hiniker had not turned over his preparation file to appointed counsel), though there may be some question as to

the diligence of appointed counsel's efforts to acquire this file. Further doubt as to what transpired prior to the lineup results from the District Court's statement, in granting the motion to sever the trial of Scarpellino and Valez, that Scarpellino's counsel "claims he learned only a short time ago that there was an accomplice and he says he did not anticipate going to trial with anybody else." This claim, if true, would tend to undermine the Government's position that Scarpellino's counsel represented both Scarpellino and Valez at the lineup, for it seems most improbable that Scarpellino's counsel would not be informed of the charge against Valez if he did in fact represent Valez at the lineup.

Under United States v. Wade, 388 U. S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), a pretrial lineup for the purpose of identification is a critical stage in the criminal process at which the defendant has a right to counsel. The Court recognized that while "[a] major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification," there is serious difficulty in depicting what transpires at lineups. *Id.* at 228, 87 S.Ct. at 1933. It is because the accused's "inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification" that the pretrial lineup was found to be a critical stage requiring the presence of defendant's counsel. *Id.* at 232, 87 S.Ct. at 1934.

There is no dispute as to the applicability of *Wade* in the instant case since the challenged lineup apparently occurred in February or March 1969, over four months after the indictment of the defendant; [1] however, whether there is

---

1. Inasmuch as neither party argued or briefed the applicability of 18 U.S.C. § 3502, we decline at this time on this inadequate record to determine its import. 18 U.S.C. § 3502 provides:

"The testimony of a witness that he saw the accused commit or participate in the commission of the crime for which the accused is being tried shall be admissible in evidence in a criminal

plain error under *Wade* is troublesome because of the inadequate record. We are reluctant to consider *Wade* claims raised for the first time on appeal when there is difficulty in ascertaining the true facts.[2] Rule 52(b), Fed.R.Crim.P., provides that "[p]lain errors or defects affecting substantial rights may be noticed" even though no objection was made at trial and we would not hesitate to note plain error here if plain error was demonstrated on the record. However, the record is silent as to whether defendant Valez waived his right to counsel, as to whether substitute counsel was utilized and as to whether there were sufficient independent sources for the in-court identifications in the event of a *Wade* violation. We are therefore unable to ascertain on this record whether or not plain error was committed. A review of the pertinent cases still leaves us in an unsatisfactory position.

In Rivers v. United States, 400 F.2d 935 (5th Cir. 1968), the Fifth Circuit Court of Appeals found plain error in the admission of an in-court identification by a witness who had identified the accused in a pretrial hospital lineup at which the accused did not have counsel and had not been advised of his right to counsel. In the instant case, although the record is silent, the Government concedes that Valez's counsel was not present at the lineup. However, the fact that defendant lacked counsel at the lineup is not sufficient for us to decide whether plain error was committed in the case at bar for we do not know why defendant's counsel was not present if notified, or if adequate substitute counsel was provided,[3] or if defendant waived counsel.

United States v. Mooney, 417 F.2d 936 (8th Cir. 1969), cert. denied, 397 U.S. 1029, 90 S.Ct. 1280, 25 L.Ed.2d 541 (1970), relied on by the Government, is

---

prosecution in any trial court ordained and established under article III of the Constitution of the United States."

For a discussion of the issues posed by § 3502 see Burt, Miranda and Title II: A Morganatic Marriage, 1969 The Supreme Court Review 81 (1969); Note, Title II of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Harv.L. Rev. 1391 (1969); Comment, Title II of the Omnibus Crime Bill: A Study of the Interaction of Law and Politics, 48 Neb. L.Rev. 193 (1968).

2. *Wade* objections can properly be made by a motion to suppress identification testimony prior to trial or during trial. A pretrial motion is much the better practice, however, since it "allows a suppression hearing and a decision on the disputed evidence before a jury is empaneled, and promotes an orderly and uninterrupted trial." Solomon v. United States, 133 U.S.App.D.C. 103, 408 F.2d 1306, 1309 (1969). Notwithstanding defense counsel's primary responsibility for raising *Wade* objections prior to trial, in cases which appear to involve identification testimony, the trial judge should "on the record and out of the presence of the jury inquire of defense counsel whether they object on *Wade* or *Stovall* grounds to any identification testimony which might be offered." *Id.*

3. *Wade* expressly left "open the question whether the presence of substitute counsel might not suffice where notification and presence of the suspect's own counsel would result in prejudicial delay." 388 U.S. at 237, 87 S.Ct. at 1938 (footnote omitted).

We note that utilization of substitute counsel was upheld in United States v. Kirby, 427 F.2d 610 (D.C.Cir. 1970). There the Assistant United States Attorney obtained a judicial order requiring the defendant's presence at a lineup. The defendant's counsel did not receive notice of the lineup and was not present. However, a member of the staff of the Legal Aid Agency did represent the defendant at the lineup. The Court found that *Wade* explicitly contemplated the possible use of a substitute counsel and held that the Legal Aid attorney's presence at the lineup on the behalf of the defendant adequately met the substitute counsel test.

The Court noted that a new procedure has been subsequently adopted in the District of Columbia "whereby an Assistant United States Attorney obtains a judicial order which requires both the defendant and his attorney to attend the lineup." *Id.* at 614. The Court indicated that this was a generally acceptable procedure and that use of substitute counsel to meet the possibility of the occasional administrative slipup was permissible.

inapposite. In *Mooney* we held there was no plain error in permitting a bank teller to make an in-court identification of the defendant despite the fact that the teller's attention had been directed to the defendant in the court hallway just prior to the opening of trial by someone representing the government. *Mooney* is clearly distinguishable because we held there was no error under *Wade* at all since defendant's counsel was present and a lineup situation was not involved.

 We fully recognize that a defendant can waive his right to counsel at the lineup, but the burden of establishing an intelligent, knowing waiver is upon the government. We also think that utilization of substitute counsel is permissible under *Wade* "where notification and presence of the suspect's own counsel would result in prejudicial delay." 388 U.S. at 237, 87 S.Ct. at 1938. Since the record is barren as to whether Valez made an intelligent waiver of his right to counsel, whether prejudicial delay would have been caused by scheduling the lineup so that Valez's counsel could be present, and whether (and what type of) a substitute counsel arrangement was utilized, we remand to the Dis-

trict Court to hold an evidentiary hearing to determine these facts. *See* Wright v. United States, 131 U.S.App.D.C. 279, 404 F.2d 1256 (1968).

A plenary hearing should be held on the whole lineup procedure and the issues raised, including waiver and substitute counsel, and if the trial court finds that Valez did not waive his right to counsel or that substitute counsel was not provided, it must then determine whether there is clear and convincing evidence that the in-court identifications by Korman, Sundland, and Totten "were based upon observations of the suspect other than the lineup identifications."[4] 388 U.S. at 240, 87 S.Ct. at 1939. If on remand the court finds that the lineup procedure was illegal and that none of the in-court identifications by Korman, Sundland and Totten was based upon other independent sources than the lineup identification,[5] a new trial should be granted; however, should independent sources exist for any (but not all) of these in-court identifications, the court must determine whether admission of the tainted in-court identification(s) was harmless error.

The defendant's second contention is that if the in-court identification evi-

4. "Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." United States v. Wade, 388 U.S. at 241, 87 S.Ct. at 1940 (footnote omitted).

5. The record indicates that Korman, Sundland and Totten each identified the defendant from photographs shown to them by the FBI prior to the lineup. Should the District Court deem it necessary to look to these photographic identifications as other independent sources for these

witnesses' in-court identifications of the defendant, the court should determine whether the showings were after the defendant was in custody and whether his attorney was present. We do not here decide but note that there is some difference of opinion as to whether the *Wade* rule is applicable to pretrial photographic identifications of an accused who is in custody. *Compare* United States v. Zeiler, 427 F.2d 1305, (3d Cir. 1970) (holding accused has right to counsel) with United States v. Ballard, 423 F. 2d 127 (5th Cir. 1970), McGee v. United States, 402 F.2d 434 (10th Cir. 1968), cert. denied, 394 U.S. 908, 89 S.Ct. 1020, 22 L.Ed.2d 220 (1969) and United States v. Bennett, 409 F.2d 888 (2d Cir.), cert. denied, Jessup v. United States, 396 U.S. 852, 90 S.Ct. 117, 24 L.Ed.2d 101 (1969) (holding no right to counsel). *See generally* Comment, The Right to Counsel at Lineups: Wade and Gilbert in the Lower Courts, 36 U.Chi.L.Rev. 830, 849–53 (1969).

dence was properly admitted, the identification evidence alone is not sufficient evidence to sustain his conviction because no two witnesses agreed as to what the robber looked like and because the defendant's appearance in court differed from each of the witnesses' description of the robber. We disagree.

Two bank employees, Korman and Moodie, positively identified defendant as the robber, while employees Sundland and Totten noticed a close resemblance between the robber and the defendant. Each of the witnesses noticed the robber had something in his mouth to distort his appearance and witness Totten noticed that he was wearing pancake makeup on his face, which explains the failure of any of the witnesses to notice the scars on defendant's face. Despite the attempted disguise, each of the witnesses noted the robber had high cheekbones—as does the defendant.

█ If the identification evidence was properly admitted, we think it is more than sufficient to sustain the conviction. As we stated in McClard v. United States, 386 F.2d 495, 497 (8th Cir. 1967), cert. denied, 393 U.S. 866, 89 S.Ct. 149, 21 L.Ed.2d 134 (1968):

> "In a criminal case where there has been a conviction resulting from a jury verdict of guilty, the appellate court must take that view of the evidence that is most favorable to supporting the jury verdict and must accept as established all reasonable inferences that tend to support the action of the jury. Any conflicts in the evidence are resolved in favor of the jury verdict."

We remand to the District Court for further proceedings consistent with this opinion. If the District Court finds upon hearing that the lineup procedure was properly conducted under current constitutional standards or there was adequate identification independent of the lineup, the judgment of conviction shall stand approved subject to right of appeal on this issue; otherwise the judgment shall be vacated and a new trial granted.