515 P.2d 600

**In the Matter of the Appeal In PIMA COUNTY ANONYMOUS, JUVENILE ACTION NO. J 24818–2.**

**No. 10894.**

Supreme Court of Arizona,
En Banc.

Oct. 15, 1973.

Rehearing Denied Nov. 21, 1973.

Howard A. Kashman, Former Pima County Public Defender, Edward P. Bolding, Pima County Public Defender by Eleanor Daru Schorr, Former Deputy Public Defender and Richard Van Duizend, Deputy Public Defender, Tucson, Fred Klein, Third Year Law Student University of Ariz., for appellant.

Gary K. Nelson, Atty. Gen., Phoenix by Howard L. Fell, Asst. Atty. Gen., Rose Silver, Former Pima Co. Atty., Dennis DeConcini, Pima Co. Atty. by Fred Belman, Deputy Co. Atty., Tucson, for appellee.

HAYS, Chief Justice.

This appeal arises from the April 13, 1971, order of the Juvenile Division of the Superior Court of Pima County, Juvenile Court No. 24818–2, declaring appellant to be a delinquent; and from the denial on June 17, 1971, of appellant's motion for a new trial, and in the alternative to alter or amend judgment. Thereafter, on request of the Court of Appeals, Division Two, this court took this case as a direct appeal.

Between March 4 and March 7, 1971, a series of daylight attempted robberies and robberies took place in the vicinity of Nash Elementary School. The victims ranged between the ages of eight and twelve years old. The items involved included cash not

exceeding $2.00, a bike lock and some keys. None of the victims could provide a detailed description of their assailant but a few common facts were given by all of the victims. The assailant was a white male, junior high school age, riding a red bicycle, wearing a red T-shirt, and using a switchblade knife.

Due to these incidents, the police established a mobile stake-out surveillance of the area. Involved in this stake-out were two officers, one of whom was a school resource officer for Amphitheater Junior High School and Nash Elementary School.

On March 8, 1971, one of the detectives observed the juvenile, appellant herein, on two occasions. The first observation placed the juvenile by a building under construction. The second occasion occurred just five minutes later and placed the juvenile as heading towards an area of a hotel in the immediate vicinity of the first sighting. The detective then left his unmarked car and ran towards the juvenile and caught up with him in the coke machine area.

At this point, the juvenile was ordered off his bicycle and was searched by the detective. The juvenile was asked where the knife was, to which he responded that he did not have a knife, nor did the search produce one. The juvenile was also questioned as to where he was going and why he was absent from school. The juvenile responded that he was going to a nearby gas station to have his bicycle fixed. The detective then asked the juvenile to accompany him to his car so that they could proceed to Nash Elementary School. From testimony at the hearing, it is clear that the detective took the juvenile into custody as a possible suspect in the robberies.

Upon arrival at Nash School, the juvenile was placed in the reception room outside the principal's office. The detective then requested that the robbery victims be called into the office. In substance, each victim was asked to walk into the room and inform the detective if there was anyone there that they knew. Each of the victims complied with this request and each identified the juvenile in question as the assailant.

The juvenile was subsequently charged with five counts of armed robbery, one count of assault with a deadly weapon and one count of theft. The theft count was dismissed in the trial court's minute entry of April 12, 1971, and order of April 13, 1971, and the assault charge was reduced to simple assault. At the adjudicatory hearing of April 8–9, 1971, counsel for the juvenile made a continuing objection to the use of the testimony of those witnesses who participated in the identification at Nash School. The county attorney attempted to validate the in-court identification by propounding a series of hypothetical questions that required the witnesses to block out from their memories the identification at the school. In defense, the juvenile offered the testimony of a relative as to his whereabouts on one of the days involved.

On April 12, 1971, by a minute entry and by an order filed April 13, 1971, the juvenile was declared a delinquent. Counsel for the juvenile moved for a new trial or in the alternative to alter or amend judgment. This motion was denied by the court by a minute entry on June 17, 1971. The dispositional hearing was held on July 9, 1971, and the juvenile was placed on probation by an order filed July 12, 1971.

Appellant presents three issues for resolution: that appellant has been denied the right to an impartial finder of fact by the juvenile court's involvement in the accusatory process; that the arrest of appellant on March 8, 1971, was illegal and any evidence derived therefrom is inadmissible; and that the hypothetical questions propounded by the county attorney in order to validate the in-court identification are not permissible under State v. Dessureault, 104 Ariz. 439, 454 P.2d 981 (1969).

Appellant's attack on the involvement of the juvenile court in the accusatory process rests upon the Equal Protection and Due Process Clause of the Fourteenth Amend-

ment of the United States Constitution and Article II, Section 4, and Article VI, Section 26 of the Arizona Constitution. The effect of these provisions is to guarantee to all who are brought before the bar of justice, a fair and impartial trial by a fair and impartial judge. With that premise we cannot disagree for such a right " . . . is a valuable substantive right originating in the common law and recognized by statute in both criminal and civil cases." Marsin v. Udall, 78 Ariz. 309, 312, 279 P.2d 721, 723 (1955). Appellant concludes that the supervisory relationship between the juvenile court judge and the court staff violate the premise that an impartial trier of fact is indispensable to the integrity of the adjudicatory process. With that conclusion we cannot agree.

The juvenile court system was originally conceived as an attempt to perform a rehabilitative function. By not treating the juvenile as a criminal, there was the possibility of preventing a future life of crime. Accordingly, rules of procedure were relaxed in order to achieve this rehabilitative goal. Over a period of years, the question arose as to whether the juvenile was receiving the worst of both worlds. Neither adequate facilities and staff nor time available for rehabilitation, nor rules of procedure could be equated with the fundamentals of due process of law. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), seemingly answered that question. Thus, Gault, *supra,* mandated certain changes in procedure in order to comply with due process requirements. Yet, there is nothing in *Gault* to foreclose the possibility that the rehabilitative function and due process could function together. The juvenile code of this state, we believe, has made the two compatible and functional.

██ We have read many of the cases cited to us by appellant. Certain categories arise in which the right to an impartial finder of fact has been violated. First, those cases in which the judge has become so personally involved as to be rendered unfit. In Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971), the defendant repeatedly insulted the trial judge and interrupted the trial. The court held that in a criminal contempt charge a defendant should be given a public trial by a judge not vilified by the contemnor. [*See also* Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), where the trier of fact was both the victim of appellant's statement and the prosecutor that brought charges seeking dismissal]. This category is not applicable for describing the juvenile justice system in this state. Furthermore, when a party feels that the juvenile judge is or may be biased against him, an affidavit of bias and prejudice may be filed pursuant to A.R.S. § 12–409. Such an affidavit can be used to disqualify the juvenile judge. Anonymous v. Superior Court in and for Pima County, 14 Ariz.App. 502, 484 P.2d 655 (1971).

A second line of cases deals with the situation where the prosecutorial and adjudicatory functions become intertwined. In Figueroa Ruiz v. Delgado, 359 F.2d 718 (1 Cir., 1966), the Commonwealth of Puerto Rico provided no prosecutors in the District Court, and the judge introduced the government's evidence and conducted cross-examination for the government. *See also* Wong Yang Sun v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950). Again, the Juvenile Code of this state does not allow the duties of the judge to merge with the duties of the prosecutor. A.R.S. § 8–233.

A third category of cases concerns situations in which the trier of fact has participated in a preliminary finding of fact. In In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), the United States Supreme Court found that a single judge grand jury was such a part of the accusatory process that the judge " . . . cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused." 349 U.S. at 137, 75 S. Ct. at 626. This line of cases strikes at prejudgment of the trier of fact prior to a particular case's being adjudicated. American Cyanamid v. F.T.C., 363 F.2d 757 (6

Cir., 1966), also raised the issue of pre-judgment. There, the F.T.C. brought charges against certain drug companies. These charges were based, to some extent, on a report issued by a Senate subcommittee. One of the F.T.C. members had been chief counsel to the subcommittee and had helped in preparing and drafting the report. The plaintiff sought disqualification of that F.T.C. commissioner and the court agreed. The Court of Appeals for the Third Circuit, in Falcone v. Dantinne, 420 F.2d 1157 (1969), found nothing inherently improper in having a union officer attend and participate in the informal hearing and then act as a trier of fact " . . . provided there is no element of bias or pre-judgment, as we find to be the case here." 420 F.2d at 1160-61.

■ The fourth category of cases involves a situation in which the trier of fact has an interest in finding against the accused. Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). None of the categories described above are applicable in describing the relationship between the juvenile judge and the juvenile court of this state. Nor are we persuaded by the recent decision of In re Reis, 7 BNA Cr.L. 2151 (1970), which struck down the Rhode Island juvenile justice system because of the juvenile court's participation in the accusatory process. We are persuaded by appellee's contention that the juvenile court merely supervises the operation of the court employees. The juvenile court does not pass on investigation reports and therefore does not have any involvement in a case prior to the adjudicatory hearing.

Therefore, we hold that the Juvenile Code of Arizona does not contravene juveniles' rights to the Equal Protection and Due Process of Law as guaranteed by the federal and state constitutions.

■ Appellant's second contention concerns the taking of the juvenile into custody on March 8, 1971. Appellant argues that this was an arrest wanting in probable cause. The trial court concluded that the juvenile was taken into custody pursuant

to the Juvenile Code, but did not couch its conclusion in terms of an arrest.

A.R.S. § 13-1401(A) reads:

"An arrest is made by actual restraint of the person to be arrested, or by his submission to the custody of the person making the arrest."

When the detective took appellant from the coke machine area to his car and did not inform appellant that he was free to go, an arrest had been consummated. This conclusion is corroborated by two factors. First, the detective testified at the hearing that he took the appellant into custody as a possible suspect in the armed robberies. The second factor is the conclusion of the trial court that the Juvenile Code gave the detective authority to seize the appellant. A.R.S. § 8-223(A)(1-4) as amended provides four grounds for taking custody of a juvenile. Subsection 1 allows for custody pursuant to an order of the juvenile court. Subsection 3 allows for custody if there are reasonable grounds to believe that the juvenile is ill or injured or in immediate danger of his surroundings and removal is necessary. Subsection 4 allows for custody where there are reasonable grounds to believe that the child is a runaway.

In the instant case, it is clear that subsections 1, 3 and 4 of A.R.S. § 8-223(A) are inapplicable to support the seizure of appellant's person. It is subsection 2 that provided the basis for the detective's action. Subsection 2 allows a juvenile to be taken into custody.

"Pursuant to the laws of arrest, without a warrant, when there are reasonable grounds to believe that he has committed a delinquent act or is incorrigible." A.R.S. § 8-223(A)(2).

■ Before determining whether the arrest of March 8, 1971, was lacking in probable cause, it is necessary to clarify the phrase "reasonable grounds" as used in A.R.S. § 8-223(A)(2). The trial court expressed some concern that this phrase might support an arrest on less than probable cause. We think that is not the case, as A.R.S. § 8-223(A)(2) should be read in

light of A.R.S. § 13–1403(1–4) as amended. Section 13–1403 sets forth four situations in which a peace officer may, without a warrant, arrest an individual. Sections 1 through 4 use the language "probable cause." A.R.S. § 8–223(A)(2) begins with "[p]ursuant to the laws of arrest, without a warrant . . ." To the extent that these sections conflict, it is a conflict of semantics and not substance. The terms "probable cause" and "reasonable grounds" are often used interchangeably. It would do violence to the concept of equal protection of the law to allow a juvenile to be taken into custody pursuant to A.R.S. § 8–223(A)(2) without the standard being probable cause.

■ Having determined that an arrest took place on March 8, 1971, we consider now the second prong of appellant's argument—that the arrest was made without probable cause. "Arrest with or without warrant must stand upon firmer ground than mere suspicion . . ." State v. Dessureault, *supra.* The totality of facts in the instant case persuades us that the arrest was predicated on mere suspicion.

Appellant's behavior consisted of being by a building under construction and riding his bike into the coke machine area of a hotel. Neither of the two acts could arouse a reasonable belief that appellant had committed a crime. Nor did appellant's appearance at the time provide any more of a basis. Appellant was not wearing any of the clothes described by the victims and he was riding a gold bicycle, while a red bicycle was the one used by the unknown assailant. There is a conflict in the testimony as to appellant's alleged attempt to run from the detective. Standing alone, this fact would not provide the basis for an arrest. Indeed, the only characteristic that appellant possessed in common with the alleged assailant was being a white male of junior high school age. Nor does the case at bar present any exigent circumstances, such as a possibility of appellant's fleeing the jurisdiction. There

was sufficient time to make application pursuant to A.R.S. § 13–1424 as amended to detain appellant for identification purposes.

■ The effect of this illegal arrest is to taint the evidence of the show-ups at Nash Elementary School and that evidence should have been excluded at the hearing. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). However, that is not to say that subsequent identifications are also excluded. The procedure in State v. Dessureault, *supra,* should have been followed and the court should have made a finding as to whether or not the subsequent identifications were tainted by the original show-ups.

The trial judge further expressed some doubts as to the show-ups because of their suggestive nature. We need not meet this because of the foregoing position as to the arrest.

■ The adjudication of delinquency was based on a number of charges, all but one of which were subject to the tainted identification problem. It is appellant's contention that all the charges had a cumulative effect in the adjudication of delinquency and that this court must find beyond a reasonable doubt that the tainted identifications did not lead to the trial court's decision. We find to the contrary. Each charge in and of itself is a sufficient basis for the determination of delinquency. Striking the charges which may have rested on tainted identifications, one count of attempted robbery still remains. Finding no clear error on this charge, we affirm that adjudication and the disposition order entered by the juvenile court.

CAMERON, V. C. J., LOCKWOOD, J., and STEVENS and HAIRE, Judges of the Court of Appeals, Division One, concur.

Note: HENRY S. STEVENS and LEVI RAY HAIRE, Judges of the Court of Appeals, Division One, were called to sit in this matter.