564 P.2d 877

**STATE of Arizona, Appellee,**

v.

**Alva COOK, Appellant.**

**No. 3519–PR.**

Supreme Court of Arizona,
In Banc.

April 25, 1977.

Bruce E. Babbitt, Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., Cleon M. Duke, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

GORDON, Justice:

Appellant was convicted in a jury trial of first degree burglary (in violation of A.R.S. §§ 13–301 and 13–302) attempted armed robbery (in violation of A.R.S. §§ 13–641, 643, 108 and 110), attempted rape (in violation of A.R.S. §§ 13–611, 614, 108 and 110), and kidnapping (in violation of A.R.S. § 13–491). He was sentenced to serve concurrent sentences of no less than ten years nor more than fifteen years in prison on all counts. The Court of Appeals, Division One, affirmed, *State v. Cook*, 26 Ariz.App. 198, 547 P.2d 50 (1976). This Court granted review in order to clarify several issues. The opinion of the Court of Appeals is vacated; judgment of conviction and sentence affirmed in part and reversed in part; case remanded on the burglary charge.

Sometime between the hours of 5:30 p.m. September 10, 1974 and 9:00 a.m. the following morning, a burglary occurred at an office (Apartment B) on North 9th Place in Phoenix, Arizona. Items taken included a typewriter, record books and miscellaneous medical equipment used in paramedical examinations for insurance companies. Officer Sheeve of the Phoenix Police Department took the report.

At approximately 11:35 a.m. on September 11, appellant appeared at the door of the office and asked the receptionist if he could use the phone. Appellant went behind the receptionist, grabbed her, and held a knife at her neck. He went through her purse for money; finding none, he took her to his apartment next door (Apartment C).

Appellant undressed the victim and himself; the evidence is uncontroverted that he attempted to rape her, but did not. While in appellant's apartment the victim saw items which she recognized as property from the office robbed.

Thereafter appellant forced the victim to drive him various places. When they returned to the address on North 9th Place, the victim ran to the office and was let in by her employer. Neither she nor the employer saw where appellant went after her escape.

The first officer was dispatched to the address on North 9th Place at approximately 12:37 p. m. When he arrived, the officer talked with the victim for "[a]pproximately 30 seconds." The victim indicated the location of appellant's apartment as well as the fact she had seen items in a drawer which she identified as stolen from the office. The officer testified at the suppression hearing that he asked the victim if the suspect was in the apartment, and that she said she did not know but she thought he was still inside.

This officer, John Hanley, went to appellant's apartment and entered.[1] He testified that he knew immediately that appellant was not there:

"Q. At what point of time did you realize there was no one in the apartment?
"A. After I had been in there about ten seconds. It's an extremely small apartment."

Officer Hanley saw a typewriter, later identified by the employer as having been stolen from Apartment B, in an ,open closet. Hanley had heard a police report earlier that day concerning the burglary and the property taken, he testified that he felt the machine he saw in appellant's apartment was the stolen one.[2]

Hanley searched the rest of the apartment "for identification" and found some of the stolen property in drawers, as the victim had related.

Officer Sheeve, who had originally investigated the burglary, arrived after Officer Hanley and searched Apartment C. He, too, came across the drawer of stolen property. Sheeve saw appellant looking into the apartment from outside the kitchen window. Sheeve gave chase and arrested the suspect thereafter identified as appellant.

Officer Hanley advised appellant of his *Miranda* rights [3] and obtained a valid waiver. Hanley asked whether appellant knew why the Officer was there, and he testified that appellant said "Yes, I did a rape and a burglary, I'll sign a confession."

At the police station appellant was again advised of his constitutional rights and

1. On direct examination Officer Hanley testified:

   "Q. When you say that you entered the apartment, what do you mean?
   "A. I opened the door and went in.
   "Q. Was the door closed?
   "A. It wasn't closed completely. It wasn't—it's—it's locked by a padlock from the outside.
   The door was against the jamb, but it wasn't tight."

2. The police broadcast mentioned a typewriter but gave no description as to manufacturer, color, size, or other identifying characteristics. As Officer Hanley testified:

   "A. I just remember him saying about the typewriter and some of the other items that were taken.
   *     *     *     *     *     *
   "Q. Did he describe the typewriter in any manner?
   "A. No.
   "Q. He just said a typewriter?
   "A. Right.
   "Q. Was there any identification on the typewriter that leads you to conclude that it had been removed from this address in the other apartment?
   "A. No, sir. At that time I just felt like that was the typewriter."

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

made confessions concerning the kidnap, attempted rape, and burglary.

Two issues are presented to us: (1) whether the Rule 11 competency determination was properly made by the trial court and (2) whether evidence seized in a warrantless search of appellant's apartment in his absence should have been suppressed.

The first issue before us related to the process by which defendant's competency to stand trial was established.

On October 24, 1974, defendant made a motion for examination of his competency pursuant to 17 A.R.S. Rules of Criminal Procedure, rule 11.2.[4] Two psychiatrists were appointed by the court. They diagnosed defendant as competent to stand trial and assist in his own defense.

On December 16, 1974, a stipulation was filed,[5] signed by the Deputy Public Defender and Deputy County Attorney. By minute entry on December 13, 1974, the trial judge specifically found that defendant was competent to stand trial and that he understood the nature of the proceedings against him. *See* 17 A.R.S. Rules of Criminal Procedure, rule 11.1.

Appellant's trial began January 9, 1975. Before jury selection his attorney again raised the issue of competency to the court. Counsel for both sides agreed to proceed with jury selection before competency was reviewed. In chambers, after jury selection, appellant's attorney expressed the belief that psychiatric examinations conducted in October and November of 1974 might not reflect appellant's current ability to understand the nature of proceedings against him, and that appellant's psychiatric condition had deteriorated. At that time, the court asked appellant if he understood the crimes he was charged with, and he responded "[k]idnapping, attempted rape, attempted armed robbery, burglary." The

court further questioned appellant, and both sides agreed to proceed with trial pending psychiatric re-examination.

One of the court-appointed psychiatrists examined defendant the morning of January 10, 1975. Later in chambers he expressed the opinion that appellant's condition had not changed significantly since the October, 1974 examination, and that appellant remained competent to stand trial. Neither attorney questioned the psychiatrist.

Appellant contends that he was denied procedural due process when the issue of his competency to stand trial and aid in his defense was decided on the written psychiatric reports submitted by stipulation. He also alleges that his right to be present was abridged by the discussions held in chambers after commencement of the trial.

■ We recently resolved the issue of waiver of appellant's presence at competency-related hearings in *State v. Blier*, 113 Ariz. 501, 557 P.2d 1058 (1976). Since these facts fall within our holding in *Blier, supra,* appellant's allegations of error must fall. In *Blier* we were concerned with the presence of " * * * any indication in the record that the defendant is dissatisfied with his legal representation." 113 Ariz. 503, 557 P.2d at 1060. We find no indication in this record that appellant was dissatisfied with the procedures followed or with representation of counsel.

■ Appellant next cites error in the procedure followed during the in-chambers conferences held January 9 and 10. We view the trial court's actions therein as falling within the initial requirement of 17 A.R.S. Rules of Criminal Procedure, rule 11.3(a) that a court determine whether "reasonable grounds" for a competency examination exist. This was a preliminary determination of reasonable grounds only.

---

4. Rule 11.2 in effect at that time stated:
"At any time after an information is filed or indictment returned, any party may move for an examination to determine whether a defendant is competent to stand trial, or to investigate his mental condition at the time of the offense, or both."

5. "The above entitled parties, by and through their respective attorneys undersigned, hereby stipulate, pursuant to Rule 11.5, Arizona Rules of Criminal Procedure, to submit on the issue of defendant's mental competency to stand trial on the basis of the written reports * * * *."

As such, it does not rise to the level of a hearing. No change in appellant's condition was found. 17 A.R.S. Rules of Criminal Procedure, Rule 11.6, was never triggered. *Blier, supra,* again negates any contention relating to appellant's absence from the conferences in chambers. Furthermore, the fact that the psychiatrist's re-examination and conference in-chambers occurred after jury selection is irrelevant, particularly since defense counsel made no motion to the court relating to competency after the commencement of the trial.

■ The second issue before us relates to admissibility of evidence seized in a warrantless search of appellant's apartment.[6] We view the facts in the light most favorable to support the trial court's ruling on the motion to suppress. *State v. Childs,* 113 Ariz. 318, 553 P.2d 1192 (1976); *State v. Verdugo,* 109 Ariz. 391, 510 P.2d 37 (1973).

■ The record, without contradiction, shows that the officers failed to fulfill the clear requirements of A.R.S. § 13–1411[7] when they entered appellant's home.[8] The appellant and the victim had returned to the address on North 9th Place following their travels to other parts of the city. The victim then escaped, and the police were called. When the officers arrived, the victim told them briefly of the attempted rape and kidnap. She told them where she thought the suspect might then be, but not whether he was armed or when she had last seen him. Officer Hanley then went to appellant's apartment and pushed open the door without either knocking or announcing his authority and purpose.

The entry into appellant's apartment was unlawful under A.R.S. § 13–1411. The requirements of the statute are clear and unambiguous, and place as conditions precedent to a lawful entry the obligation that officers announce their authority and purpose and be refused entry.

This statute embodies the time-tested mandate of the people of Arizona that the police respect their right to be left alone. In ruling on the announcement required by a similar statute, A.R.S. § 13–1446,[9] we said: "There is no more sacred right than to have the privacy of the home protected against unreasonable searches and seizures. An unexpected breaking into a home by officers might well result in their being killed under the impression that the home owner was protecting his family and his home against intruders." *State v. Mendoza,* 104 Ariz. 395 at 399, 454 P.2d 140 at 144 (1969). It is fundamental that "knock and announce" statutes are adopted "to safeguard officers, who might be mistaken, upon an unannounced intrusion into a home, for someone with no right to be there." *Sabbath v. United States,* 391 U.S. 585 at 589, 88 S.Ct. 1755 at 1758, 20 L.Ed.2d 828 (1968).

We note that there are no exceptions on the face of the statute, nor are we persuaded to create any. The circumstances

---

**6.** Appellant also raises as an issue the question of whether his confession was admissible as the only proof of the first degree element of burglary. Since the first degree element relates only to punishment, the confession was admissible. *State v. Hunter,* 102 Ariz. 472 at 478, 433 P.2d 22 at 28 (1967).

**7.** A.R.S. § 13–1411. *Right of officer to break into building*

"An officer, in order to make an arrest either by virtue of a warrant, or when authorized to make such arrest for a felony without a warrant, as provided in § 13–1403, may break open a door or window of any building in which the person to be arrested is or is reasonably believed to be, if the officer is refused admittance after he has announced his authority and purpose."

**8.** Supplemental memoranda of law focusing on this issue were requested by the Court and filed by the parties.

**9.** A.R.S. § 13–1446(B) (Supp.1973), currently reads:

*Service of warrant; breaking and entering to execute:*

\* \* \* \* \* \*

"B. An officer may break into a building, premises, or vehicle or any part thereof, to execute the warrant when:

"1. After notice of his authority and purpose, he receives no response within a reasonable time.

"2. After notice of his authority and purpose, he is refused admittance."

were not exigent at the time of the officers' entries. The United States Supreme Court has explicitly enumerated the circumstances considered exigent within the spirit of the Fourth Amendment. They are: (1) consent, (2) response to an emergency, (3) hot pursuit of a fleeing felon, and (4) probability of imminent destruction of goods, or their removal from the jurisdiction. *Vale v. Louisiana*, 399 U.S. 30 at 35, 90 S.Ct. 1969 at 1972, 26 L.Ed.2d 409 (1970). The exigent circumstance closest to the facts in this case would be hot pursuit of a fleeing felon. Using the criteria articulated in *Vale, supra*, as a guideline, we cannot say that the entry in this case was made under any circumstances so exigent as to justify the failure to procure a warrant. We consider the following facts in arriving at this conclusion: (1) the officers involved were responding to a report of a crime they did not witness, (2) there was no indication to the police that the suspect had ever been armed; they were told only of the attempted rape, the kidnapping, and the presence of some stolen items within the apartment, (3) the police were given no information as to how fresh the suspect's flight had been; in fact the victim and appellant had left the apartment some time before, (4) the victim's information as to the suspect's whereabouts was insubstantial at best, and (5) two officers responded to the call, enabling them to secure the premises and obtain a warrant as they should have done. We feel a finding that these officers were in hot pursuit of a fleeing felon would at the very least require more concrete knowledge on the officers' part that the suspect was armed, or of his presence. Exigent circumstances cannot be found in this case.

■ Even if exigent circumstances were present under these facts, the clear requirements of A.R.S. § 13–1411 do not provide

exceptions. A.R.S. § 13–1411 is an unambiguous statement of legislative intent.[10] As the Court of Appeals said, in refusing to graft exceptions onto A.R.S. § 13–1446, "we as a court may not weigh the reasons for and against such a statute—that is the province of the Legislature * * * we decline now to engage in judicial legislation." *State v. Eminowicz*, 21 Ariz.App. 417 at 419, 520 P.2d 330 at 332 (1974). Cases dealing with A.R.S. § 13–1446 have applied the exclusionary rule to evidence seized following an unlawful entry. *State v. Mendoza*, 104 Ariz. 395, 454 P.2d 140 (1969); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Exclusion removes the incentive to violate the statutory mandate. *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The failure to comply with A.R.S. § 13–1411 requires suppression of all fruits of the illegal search. *State v. Mendoza, supra.*

■ Even if we did not have a statute such as A.R.S. § 13–1411, or it were found inapplicable, the officer's warrantless entry would still have been illegal because, as discussed *supra*, there were no exigent circumstances. We are persuaded by our sister state's recent determination of this issue in *People v. Ramey*, 16 Cal.3d 263, 127 Cal. Rptr. 629, 545 P.2d 1333 (1976). In *Ramey*, the Supreme Court of California was presented with the question of validity of a warrantless entry into a dwelling. The court in *Ramey* held that "the protection of article I, section 13, of the California Constitution and the Fourth Amendment of the federal Constitution against violation of the right of the people to be secure in their persons and houses against unreasonable seizures applies to arrests within the home, and that warrantless arrests within the home are per se unreasonable in the absence of exigent circumstances." 16 Cal.3d

---

**10.** *Compare* A.R.S. § 13–1411 *with* A.R.S. § 13–1408, in which the Legislature articulated exigent circumstances:

§ 13–1408. *Method of arrest by officer without warrant*

"When making an arrest without a warrant, the officer shall inform the person to be arrested of his authority and the cause of the arrest,

unless the person to be arrested is then engaged in the commission of an offense, or is pursued immediately after its commission or after an escape, or flees or forcibly resists before the officer has opportunity so to inform him, or when the giving of such information will imperil the arrest."

263 at 275–76, 127 Cal.Rptr. 629 at 636–37, 545 P.2d 1333 at 1340–41; *see also Commonwealth v. Forde*, 329 N.Ed.2d 717 (Mass. 1975).

■ The reasoning in *People v. Ramey, supra*, was based in part on an analysis of *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). As the court in *Ramey* explained:

"[I]t is incongruous to pay homage to the considerable body of law that has developed to protect an individual's belongings from unreasonable search and seizure in his home, and at the same time assert that identical considerations do not operate to safeguard the individual himself in the same setting. Where genuine exigencies exist, broad constitutional mandates often give way to the necessity for immediate action, and an arrest is no exception to this rule. But in the absence of a bona fide emergency, or consent to enter, police action in seizing the individual in the home must be preceded by the judicial authorization of an arrest warrant." 16 Cal.3d at 275, 127 Cal.Rptr. at 636, 545 P.2d at 1340.

It is our opinion that under A.R.S. Const. art. 2, § 8 as well as the Fourth Amendment of the United States Constitution, a warrantless entry into a dwelling in order to effect an arrest is *per se* unreasonable absent exigent circumstances. *Cf. State v. Damon*, 18 Ariz.App. 421, 502 P.2d 1360 (1972). Because this entry was *per se* unlawful, the fruits of the subsequent search should have been suppressed. *State v. Sauve*, 112 Ariz. 576, 544 P.2d 1091 (1976). *See also Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

■ Our analysis must proceed one step further. Even if the entry into appellant's home could be justified, the physical evidence obtained therefrom would still be suppressed as the officers knew within seconds that the suspect was not there. At that point, the officers' duty was to secure the premises and obtain a search warrant. *See State v. Sauve, supra.* If the police had been lawfully within appellant's home for a purpose other than to seize the items seen, the "plain" or "open view" doctrine would permit the seizure and use in prosecution of items which inadvertently came into their view. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *State v. Childs*, 110 Ariz. 389, 519 P.2d 854 (1974); *State v. Caldwell*, 20 Ariz.App. 331, 512 P.2d 863 (1973). The items found after a search of appellant's closed drawers were not in "plain view" and are clearly inadmissible.

■ The plain view doctrine is further limited by the nature of the items seen. Items seized must be tied to criminal activity, either intrinsically or through an officer's knowledge and reasonable belief. *See Warden v. Hayden*, 387 U.S. 294 at 306–307, 87 S.Ct. 1642 at 1650, 18 L.Ed.2d 782 (1967). Officer Hanley testified that the typewriter seized was clearly visible in an open closet in appellant's apartment when he entered. His belief that the typewriter he saw was stolen property was based on insubstantial information at best. Hanley had heard a police report earlier in the day concerning the burglary and the property taken. This broadcast mentioned a typewriter but gave no description of manufacturer, size, color, or other characteristics. There is testimony to the effect that the victim told the officers she had seen items, stolen from the office where she worked, in drawers in appellant's apartment. Nevertheless Hanley lacked any basis for forming a reasonable belief that the typewriter seen was stolen property. He possessed at best a mere suspicion, insufficient to justify seizure. *State v. Broom*, 113 Ariz. 495, 557 P.2d 1052 (1976). The record is unclear as to how soon the second officer entered after the first. In any case, the purpose of his entry could not possibly be justified on grounds of arrest; Officer Hanley testified that he knew immediately that the suspect was not there. The typewriter should have been suppressed at trial as well.

The evidence presented at trial included two written confessions and an oral one. All confessions were made after appellant had seen the officers illegally within his apartment. The oral confession was made after Miranda [11] warnings were given and a valid waiver obtained. Officer Hanley testified, reading from the report he'd written, that

"I then asked Cook if he knew why I was here and he said, 'Yes, I did a rape and a burglary, I'll sign a confession.'"

The written confessions were given subsequently at the station.

■ Briefly, we note that the test of admissibility of evidence articulated in *Wong Sun v. United States*, 371 U.S. 471 at 487- 88, 83 S.Ct. 407 at 417, 9 L.Ed.2d 441 (1963) is "'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." Furthermore, "[i]f *Miranda* warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted." *Brown v. Illinois*, 422 U.S. 590 at 602, 95 S.Ct. 2254 at 2261, 45 L.Ed.2d 416 (1975). We cannot say that appellant's confession concerning the burglary was not a product of having already seen police officers illegally inside his apartment. We also note that the employer's identification of the stolen property in the drawer might be considered the fruit of an illegal search. See *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *see also Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); *In re appeal in Pima Cty. Anon. Juv. Act, No. 24818–2*, 110 Ariz. 98, 515 P.2d 600 (1973). Because we are remanding the case for retrial on the burglary charge, we leave those questions for the trial court. It is sufficiently clear, however, that the confessions to the attempted rape and attempted armed robbery charges were unrelated to the illegality of previous police action. The entry and search of appellant's home did not taint the subsequent confessions to those charges.

The opinion of the Court of Appeals is vacated. Judgment of conviction and sentence on the attempted rape and attempted armed robbery charges affirmed; judgment reversed and remanded on the charge of burglary.

HAYS and HOLOHAN, JJ., concurring.

STRUCKMEYER, Vice Chief Justice, dissenting.

I am compelled to dissent in this case because of the fundamental philosophy evidenced in the Court's opinion. It reverses the conviction of a confessed burglar because of the asserted actions of the police officers who effected his arrest.

## I

The majority of the Court, without any claim of error by defendant or reference in his brief or elsewhere in the record, apply A.R.S. § 13–1411, stating:

"The record, without contradiction, shows that the officers failed to fulfill the clear requirements of A.R.S. § 13–1411 when they entered appellant's home."

and again:

"The entry into appellant's apartment was unlawful under A.R.S. § 13–1411. The requirements of the statute are clear and unambiguous, and place as conditions precedent to a lawful entry the obligation that officers announce their authority and purpose and be refused entry."

I cannot agree that the entry into defendant's apartment was unlawful. A.R.S. § 13–1411 is clear and unambiguous, indeed. It reads:

"An officer, in order to make an arrest either by virtue of a warrant, or when authorized to make such arrest for a felony without a warrant, as provided in

---

11. *Miranda v. Arizona, supra*, note 3.

§ 13–1403, may break open a door or window of any building in which the person to be arrested is or is reasonably believed to be, if the officer is refused admittance after he has announced his authority and purpose."

It authorizes a police officer to break open a door or window of a building in order to make an arrest if he is refused admittance after he has announced his authority and purpose. *It does not say that an officer must announce his authority and purpose before he enters a building if it is unnecessary to break open a door or window.*

The statute is not of recent origin. It is virtually an enactment of the common law. Compiler's notes § 44–132, A.C.A. 1939. Similar language is to be found in the Penal Code of 1901, § 744. It has no application to this case because the police officers did not "break open a door or window" to gain admittance to the defendant's apartment. See, *Argetakis v. State*, 24 Ariz. 599, 212 P. 372 (1923), where the police entered an unlocked door after an unanswered knock but no announcement of authority or purpose, and the defendant's conviction was affirmed.

Police Officer John Hanley testified without contradiction that the door of defendant's apartment was unlocked and not completely closed:

"The door was unlocked. The door was closed. It wasn't closed tight, it was against the door jamb, and I entered with the intention of apprehending the subject if he was still in there."

No doubt the Legislature, if it had intended that an officer before entering a building announce his authority and purpose, would have said so in just that language.

I am aware of the construction attached to the congressional enactment, 18 U.S.C. § 3109, in *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968). There, it was held the phrase "break open" as used by Congress did not mean exclusively the use of force. However, the case of *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), controls the states:

"The States are not \* \* \* precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissable against one who has standing to complain." Id. at 34, 83 S.Ct. at 1630, 10 L.Ed.2d at 738.

But even if we arbitrariiy assume in the face of the plain language of the Arizona statute that the police officer should have first announced his authority and purpose before entering the defendant's apartment, Justice Traynor's statement in construing a statute identical to Arizona's is applicable here:

"Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. (*Read v. Case*, 4 Conn. 166, 170 [10 Am.Dec. 110]; see, Rest., Torts, § 206, com. d.) Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance." *People v. Maddox*, 46 Cal.2d 301, 306, 294 P.2d 6, 9 (1956).

Officer Hanley could reasonably assume that the defendant would attempt to frustrate the arrest had he announced that was his purpose in entering—either by resistance or attempt to escape through another entrance to the building.

II

The majority criticize the officers' entry into the defendant's apartment because "the circumstances were not exigent," meaning "critical or pressing", Webster's Third New International Dictionary (1961). Here, again, I cannot agree with the major-

ity. I think the circumstances were both critical and pressing.

This is what happened. The prosecuting witness, who was 18 years of age, was employed at the Community Medical Services as a receptionist. The defendant, who had an apartment next door to the Community Medical Services office, came in at about 11:30 in the morning and "grabbed" her and held a 12-inch butcher knife at her neck. He took her purse and the money in it, compelled her to go with him to his apartment, disrobed her and attempted sexual intercourse. Thereafter, he made her drive him around Phoenix in her car. When they returned and she saw her employer's car was parked at the Medical Services office, she pushed on the horn and ran into the office. Her employer called the police. She and her employer went outside to await their arrival, "and the police came shortly after that."

The prosecuting witness testified:

"then [the police] asked me where I thought he [the defendant] might have gone, and I just said, he might have gone to the apartment, I thought he had to be around there, because he didn't have a car or anything."

Officer Hanley testified:

"She said she went around the front of the car after she had honked on the horn and beat on the door and the last she saw him, he was going back towards the apartment and she didn't know where he went from there."

The majority concede that hot pursuit of a fleeing felon is an "exigent circumstance" which would justify entry into the defendant's apartment, but do not consider that the officer was in hot pursuit, although the defendant was last seen but a short time before in close proximity. A peace officer could reasonably believe that in order to put an end to the unrestrained criminal activities of this man he should immediately be arrested and that the most likely place to accomplish this was to intercept him at his apartment.

In *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the Supreme Court found hot pursuit in circumstances comparable to those of the instant case. There, an armed robber entered upon the business premises of a Diamond Cab Company in Baltimore, Maryland, and took $363.00. Two cab drivers followed the man to 2111 Cocoa Lane in Baltimore, where one driver called the company dispatcher by radio and told him the man had entered a house at that address. The dispatcher relayed the information to the police and very shortly thereafter the police arrived at the house, which they entered and searched, finding the defendant, Hayden. Even though it was plain the police had the opportunity to watch the house in which Hayden was arrested until a warrant could be obtained, the Court held:

"We agree with the Court of Appeals that neither the entry without warrant to search for the robber, nor the search for him without warrant was invalid. Under the circumstances of this case, 'the exigencies of the situation made that course imperative.'" Id. at 298, 87 S.Ct. at 1645, 18 L.Ed.2d at 787.

III

I am further of the opinion that under the particular circumstances of this case, the police officers having made a lawful entry could properly examine the apartment. Officer Hanley testified:

"Q. All right. When you went in there, what did you do inside?

A. The apartment was empty and due to the fact that the crime had taken place there and she had told me that that's where he took her, I felt that the suspect lived there, otherwise he wouldn't have been in there, and I searched his apartment for identification so I could put out a broadcast as to his identity."

The officers could hardly have done less. The exigencies of the circumstances demanded that the defendant be identified with certainty in order to facilitate his earliest apprehension. That the officer saw part of the stolen property which the prose-

cuting witness had already told him about is of no significance. It is straining at gnats to say that knowledge of the stolen property "has been come at by exploitation" of the illegality of the police officers when they already knew that most of the property taken in the burglary was present in the apartment. Knowledge which can be attributed to an independent source does not require the exclusion of evidence since the evidence is not attributable to the fruit of a poisonous tree. Anno., "Fruit of Poisonous Tree" Doctrine Excluding Evidence Derived from Information Gained in Illegal Search, 43 A.L.R.3d 385, 399. Since the officer was aware that some of the stolen property was in the defendant's apartment before he went into the apartment, he could reasonably assume that the typewriter he saw was the one reported to have been stolen in the same theft. The trial court was correct in denying the motion to suppress.

IV

Although the foregoing points would alone seem to justify an affirmance of the judgment, I am most concerned with this Court's handling of the defendant's confession to the crime of burglary. The defendant at the trial and after the jury was impaneled, requested a voluntariness hearing as to the admissibility of his confessions. At the voluntariness hearing, the State called the two police officers who had arrested the defendant. They testified that they had a conversation with him at the scene of his arrest and that he had been read his rights from a standard rights card. He was then asked by Officer Hanley:

"Why do you think I am here?"

to which the defendant replied:

"I did it, I did a burglary and a rape."

When the defendant was taken to the police station, he told Police Officer Charles Braden the details of his criminal rampage and they were incorporated in two written statements which the defendant signed. At the conclusion of Officer Braden's testimony, the defense waived the testimony of another police officer who had witnessed

the statements, and in response to the court's question:

"Do you have an argument to make or—" replied:

"No, Your Honor, I'll rest on the evidence."

The trial judge then found that the confessions were knowingly, intelligently and voluntarily made.

The defendant did not take the witness stand at the voluntariness hearing, did not say that his confessions were involuntary either then or now, did not move for a new trial after his conviction for the reason that his confessions were involuntary, did not urge in his notice of appeal that his confessions were involuntary, did not assign as error in this Court that his confessions were involuntary. Yet the majority, without any suggestion from the defendant, decide they "cannot say that appellant's confession concerning the burglary was not a product of having already seen police officers illegally inside his apartment."

The theory that an illegal search tainted the confessions is dredged up by the majority of the Court out of their unbridled imagination more than two years after the defendant's trial. There is no suggestion whatsoever in the record that the circumstances coerced the defendant into confessing. He did not testify at a time when he could have at the voluntariness hearing, at a time when he was not in the presence of the jury and the examination would have been directed to the coercive circumstances surrounding the arrest and attendant confessions.

The rule is recognized everywhere that a motion for a new trial and a statement of the grounds or reasons therefor must be made in order to apprise the trial court of possible error and avoid the necessity of appeal. Lacking such a motion, any error later asserted is not preserved for appellate review. In *State v. Boozer*, 80 Ariz. 8, 291 P.2d 786 (1955), this Court said:

"In the instant case as to practically all of the various matters now complained of no objection was then made, and it is

significant that on motion for new trial these matters were not set forth as grounds for granting such motion. Hence they cannot be reviewed here." Id. at 13, 291 P.2d at 789.

The standard for review on appeal in this State lacking a motion for a new trial is "fundamental error." In the federal courts, lacking a motion for a new trial, it is "plain error." *United States v. Stamas*, 443 F.2d 860 (1st Cir.), *cert. denied*, 404 U.S. 851, 92 S.Ct. 86, 30 L.Ed.2d 90 (1971); *United States v. Valez*, 431 F.2d 622 (8th Cir. 1970), *appeal after remand*, 467 F.2d 600 (1972). Since the defendant did not testify when he had the opportunity that the presence of the officers in his apartment was coercive, nor did his lawyer ever argue in this Court or in the court below that defendant was coerced into confessing, the determination by the trial court that the confession was voluntary was correct.

I do not think it is necessary for the Court to be so solicitous of the defendant. He had competent counsel who certainly would have brought out that his client was coerced had it been true. While the majority do not reverse because they cannot say the defendant's confession was not a product of having already seen police officers illegally inside his apartment, the opinion suggests a new defense, one which at present finds no support in the facts and derived solely as a figment of the reviewing judges' imagination. Decisions such as these encourage frivolous appeals and perjury by defendants on retrial. Trial judges, attorneys and law enforcement officers become confused because they do not know what standards should be applied in order to assure a constitutional trial to an accused.

For the foregoing reasons, the judgment of conviction on burglary should be affirmed.

CAMERON, Chief Justice, dissenting.

I dissent from that portion of the majority opinion which indicates that defendant's oral confession might be the result of his having seen the police officers inside his apartment. Even assuming the entry was illegal, I do not believe that the oral confession could be considered a product of that illegal entry.