582 P.2d 175

STATE of Arizona, Appellee,

v.

Frank Baldwin DAVIS, Jr., Appellant.

No. 4166.

Supreme Court of Arizona,
En Banc.

July 12, 1978.

Bruce E. Babbitt, former Atty. Gen., John A. LaSota, Jr., Atty. Gen. by William J. Schafer, III, and Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Michael G. Sullivan, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

Appellant Frank Baldwin Davis, Jr., was found guilty by a jury of obstructing justice and assault with a deadly weapon. Imposition of sentence was suspended, and appellant was placed on probation for five years. As a condition of probation, appellant was required to spend six months in the Maricopa County Jail. Appellant was also ordered to spend thirty days in the custody of the Department of Corrections. The jail time was to begin upon appellant's release from prison.

Appellant appealed to the Court of Appeals. The Supreme Court has jurisdiction under 17A A.R.S. Supreme Court Rules, rule 47(e).

The victim of Davis's assault with a deadly weapon was Glendale Police Officer Morache. Officer Morache testified that he had been parked at the curb in a residential area filling out reports about 10:30 P.M. He was pulling away from the curb with only his parking lights on when a car moving in the opposite direction swerved across the center of the street and came within approximately two feet of Morache's car. The driver of the car yelled obscenities at the officer and told him that he should turn on his lights.

Noting that the driver's behavior suggested intoxication or an irrational emotional state, Morache turned on his emergency lights, made a "U-turn," and followed the driver. The driver did not stop for the officer's flashing lights, but pulled into a residential driveway a short distance from where he first confronted the officer. Morache parked so that his car blocked this driveway, got out of his car, and ran up to appellant who had left his car and was moving toward the door of the residence. The officer looked into appellant's car and saw no one in it. Morache was in uniform and was driving a marked police car.

Outside the house, Morache twice asked appellant for his driver's license. Appellant answered with obscenities and refused to show his license. The officer noticed a faint smell of alcohol on appellant's breath. After the officer's second request, appellant opened the front door of the residence, walked in, and slammed the door in the officer's face. Morache opened the door and walked in also. Appellant picked up a pool cue and held it as if he intended to strike the officer. Morache asked several more times to see appellant's driver's license; the appellant responded with obscenities and did not produce his license. Morache put his hand on the mace canister which hung from his belt. The appellant

threatened to kill the officer with the pool cue if the officer used the mace. At some point during this rapid series of events inside the house, Morache asked appellant to put down the cue stick. The officer never did use his mace, and he did not reach for his gun which was also on his belt.

The appellant, still holding the cue, walked into the kitchen and started to use the telephone; the officer followed him and tried to take the cue away from him. The appellant hit Morache on the top of the head twice with the cue. There followed a struggle between the officer and appellant during which both spun into walls, a kitchen window was broken, and the two ended up in a bedroom. The appellant was finally subdued and handcuffed with the help of additional officers who had responded to Officer Morache's call for assistance.

After appellant was finally under control, the assisting officers noticed that Morache had a head wound and seemed dazed. Morache was taken to a hospital, treated for a cut on his head, and released (Glendale police officers are not issued helmets.)

Appellant argues that his convictions should be reversed because he was unlawfully arrested inside his home. A.R.S. § 13–1411 provides:

"Right of officer to break into building

"An officer, in order to make an arrest either by virtue of a warrant, or when authorized to make such arrest for a felony without a warrant, as provided in § 13–1403, may break open a door or window of any building in which the person to be arrested is or is reasonably believed to be, if the officer is refused admittance after he has announced his authority and purpose."

■ We believe that Officer Morache complied with this statute. The officer's authority was apparent from his uniform. Appellant was aware of the officer's purpose because the officer had asked to see appellant's driver's license and because appellant knew that only minutes before he

had recklessly driven his car very close to the officer's while yelling obscenities. Appellant must have realized that he was about to be arrested for his criminal behavior. The slamming of the door in the officer's face indicated that the appellant was refusing admittance to the officer. The statute does not require explicit verbal statements of authority, purpose, or denied permission for the officer to enter. A non-verbal communication adequately satisfies the statute.

■ The series of events preceding appellant's entry into the residence would have justified appellant's arrest for obstructing justice. Appellant's failure to stop for the officer's flashing overhead lights, his refusal to show his driver's license, his walking away from the officer, and attempting to secrete himself within the residence constituted resisting, delaying, or obstructing a public officer in the discharge of his duties, A.R.S. § 13–541; by these actions, appellant obstructed justice because he exerted himself to counteract or defeat the officer's performance of the duty of identifying appellant and investigating the reason for appellant's erratic driving and irrational behavior. *State v. Snodgrass,* 117 Ariz. 107, 570 P.2d 1280 (App. 1977). Since the officer could have arrested appellant outside the residence for the felony of obstructing justice,[1] the officer lawfully pursued appellant into the home under A.R.S. § 13–1411.

■ In addition to complying with the applicable statute (A.R.S. § 13–1411), officers must not violate the Fourth Amendment to the United States Constitution when entering a private home. In the recent case of *State v. Ferguson,* 119 Ariz. 55, 579 P.2d 559 (1978), we held that where exigent circumstances exist, officers may enter a private home without a warrant to make an arrest. The United States Supreme Court has stated that the following circumstances justify warrantless entry into

---

1. By the prescribed punishment in A.R.S. § 13–541, obstructing justice can be a felony or a misdemeanor. Such an "open-end" offense

is deemed a felony unless the trial court declares it to be a misdemeanor. *State v. Tuzon,* 118 Ariz. 205, 575 P.2d 1231 (1978).

a private place: consent; response to an emergency; hot pursuit of a fleeing felon; and probability of imminent destruction of goods, or their removal from the jurisdiction. *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *see also State v. Cook*, 115 Ariz. 188, 564 P.2d 877 (1977). Since appellant's behavior outside the home provided probable cause for the officer to believe that appellant was obstructing justice, appellant was a fleeing felon. It was thus proper for the officer to follow appellant into the home.

■ Appellant complains that certain of the trial court's instructions to the jury denied him a fair trial. The disputed instructions deal with the officer's right to enter the home, what actions both the officer and appellant could lawfully take after the officer's entry, and the definition of "exigent circumstances." We have carefully reviewed these instructions and appellant's arguments concerning them, and we do not find that the instructions prevented a fair trial.

Appellant contends that he was denied a fair trial by a police officer's reference to appellant's exercise of his right to remain silent. This claim is based upon the following trial testimony:

"*The Prosecutor:* And were you asking him the standard questions for booking?
"*The Officer:* Yes, I was.
"*The Prosecutor:* Did he make any statements to you during the time you were with him there relating to the events of that night?
"*The Officer:* Yes, he did.
"*The Prosecutor:* Were those particular statements made in response to questions that you had asked him?
"*The Officer:* No. Okay. When I asked him about the incident, he advised me that he wished to remain silent, so I didn't bother to .ask him any more about the questions.
"*The Prosecutor:* That is not what my question was, and I just move to strike the answer, Your Honor.
"*The Court:* It may be stricken."

During the motion for mistrial arising from this testimony, the trial court offered to specifically instruct the jury to disregard the stricken answer, but defense counsel did not accept this offer.

■ Generally, it is error for the prosecutor to draw a derogatory inference from the fact that the accused declined to speak to police upon his arrest. *State v. Shing*, 109 Ariz. 361, 509 P.2d 698 (1973); *see also Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The state concedes that the officer's reference to appellant's post-arrest silence was error, but argues that under the facts of the case, the error was harmless.

■ After a careful review of the law and the record, we agree with the state. Further direct examination of this same officer indicates that the prosecutor was trying to elicit from the officer two spontaneous statements appellant had made regarding the arrest and surrounding circumstances. These statements which were finally put before the jury expressed appellant's view of the arrest incident; the jury thus knew that the appellant had spoken shortly after his arrest.

We can find no United States Supreme Court authority holding that the mere mention of the fact that the accused remained silent requires a conviction to be reversed. Under the facts of this case we find no reversible error.

■ It is appellant's position that his convictions of assault with a deadly weapon and obstructing justice violate the statute which prohibits "double punishment." This statute provides:

"Different punishments for same offense; limitation and bar

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other." A.R.S. § 13–1641.

In *State v. Tinghitella,* 108 Ariz. 1, 491 P.2d 834 (1971), we adopted an identical elements test for determining whether a conviction was barred by A.R.S. § 13–1641. Under this test, the court must eliminate the evidence supporting the elements of one charge and then decide whether the remaining evidence supports the elements of the additional charge(s). *State v. Ferguson,* 119 Ariz. 55, 579 P.2d 559 (1978).

Applying this test to the evidence before us, we find that appellant was properly convicted of assault with a deadly weapon and obstructing justice. The elements of obstructing justice are set forth in A.R.S. § 13–541(A):

"A person who attempts by means of any threat or violence to deter or prevent a public officer from performing any duty imposed upon the officer by law, or who wilfully resists, delays or obstructs a public officer in the discharge or attempt to discharge any duty of his office, or who knowingly resists by the use of force or violence the officer in the performance of his duty, where the punishment is not otherwise specifically prescribed, shall be punished by a fine not exceeding five thousand dollars and imprisonment in the state prison for not to exceed five years, or by imprisonment in the county jail for not to exceed one year."

The elements of assault with a deadly weapon are found in A.R.S. § 13–249(A):

"A person who commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, shall be punished by imprisonment in the state prison for not less than one nor more than ten years, by a fine not exceeding five thousand dollars, or both."

The evidence of obstructing justice emphasized by the state was the incident in which appellant raised the cue and threatened to strike the officer, if the officer used his mace. The charge of assault with a deadly weapon was based upon the appellant's hitting the officer on the head with the cue a short time later. If the facts supporting the elements of obstructing justice, A.R.S. § 13–541(A), are eliminated, there are still enough facts remaining to support the charge of assault with a deadly weapon. *See* A.R.S. § 13–249(A). The two convictions arose from two separate, but closely related events, the threat to the officer in the front room while the officer was performing his duties of pursuing appellant and the subsequent striking of the officer in the kitchen. Accordingly, we find that the double punishment statute, A.R.S. § 13–1641, was not violated in this case, and appellant was properly convicted of both assault with a deadly weapon and obstructing justice.

Finally, appellant urges that the trial court erred in ordering him to be incarcerated in both the Department of Corrections and the Maricopa County Jail. The assault with a deadly weapon statute provides that when a person who is convicted of committing this crime while armed with a deadly weapon other than a gun is given probation, he must serve thirty to sixty days with the Department of Corrections. A.R.S. § 13–249(C). The general statute covering probation permits the trial judge to require a convicted person to serve up to a year in jail as a condition of probation. A.R.S. § 13–1657. Appellant's theory is that A.R.S. § 13–249(C) expresses a legislative intent that the time served with the Department of Corrections shall be the only incarceration imposed as a condition of probation for one in appellant's position.

When statutes conflict, a special statute will prevail over a general statute, but in applying the two statutes, the court should attempt to harmonize them. *Shirley v. Superior Court,* 109 Ariz. 510, 513 P.2d 939 (1973). The principle that the specific law is controlling over the general applies only when there is a conflict between the specific and the general law. *Sykes v. State ex rel. Williams,* 18 Ariz.App., 588, 504 P.2d 529 (1972). In this case, we see no conflict between the two statutory provisions dealing with appellant's probation (A.R.S. §§ 13–249(C) and 13–1657). We cannot see that the incarceration required under A.R.S. § 13–249(C) conflicts with the

discretionary jail time which may be a condition of probation under A.R.S. § 13–1657. Nothing in these statutes indicates to us that the legislature intended the mandatory time to be served pursuant to A.R.S. § 13–249(C) to prevent the trial court from also imposing jail time as a condition of probation.[2] Thus, the trial court did not err in requiring appellant to serve time at the Department of Corrections and at the jail as conditions of his probation.

Having reviewed the entire record and finding no reversible error, the judgments of conviction and the terms and conditions of probation are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN, and GORDON, JJ., concurring.

---

2. Nothing in this opinion should be construed to permit in the usual case the imposition of both a prison sentence and probation. *See* *State v. Carter,* 116 Ariz. 595, 570 P.2d 763 (1977) and *State v. Pakula,* 113 Ariz. 122, 547 P.2d 476 (1976).