598 P.2d 976

STATE of Arizona, Appellant,

v.

Bernita LOVE and James Ford,
Appellees.

No. 4448–PR.

Supreme Court of Arizona,
In Banc.

July 26, 1979.

158

Stephen D. Neely, Pima County Atty. by Richard Louis Strohm, Deputy County Atty., Tucson, for appellant.

Richard D. Burris, Tucson, for appellee Love.

John M. Neis, Pima County Public Defender by David C. Anson, Asst. Public Defender, Tucson, for appellee Ford.

HOLOHAN, Justice.

The State of Arizona appeals from an order of the Pima County Superior Court suppressing evidence of a large quantity of marijuana seized without warrant by the Tucson Metropolitan Area Narcotics Squad. The Court of Appeals, Division Two, affirmed the decision of the trial court. We granted the state's petition for review.

On May 9, 1977, the Tucson police department's Metropolitan Area Narcotics Squad arranged through an informant to purchase 1,000 pounds of marijuana from appellees. The sequence of events began at 4:00 a. m. when the informant notified the department that the drugs were available for sale.

The informant was in touch with undercover narcotics officers Hickey and Crossman periodically throughout the day, but the officers were unable to determine the location of the drugs until late afternoon when the appellees were ready to consummate the sale. At that point appellee Ford sent the informant to lead Hickey and Crossman to the home of Appellee Love.

The informant met the undercover agents at the shopping center where they had been waiting and led them to Love's house. They were followed by about a dozen backup officers who concealed themselves nearby. Both the undercover agents and the backup officers had become aware through information from the informant that approximately one-third of the 1,000 pounds of marijuana was inside Love's home and that the other two-thirds were stored in the trunks of two automobiles. The informant had also told them that Ford had a gun, and that other weapons were probably kept at the house.

When they arrived, the officers saw four vehicles parked in the vicinity of the house. Neither the officers nor the informant were sure which two vehicles contained the marijuana. The informant talked with Ford, who then led Hickey and Crossman into the house and to a bedroom in which 355 pounds of marijuana were stored. The agents examined the marijuana and discussed the sale. They met Love and the other two appellees in the house. Ford then took Hickey, Crossman and the informant outside, where he showed them the marijuana in the trunks of two automobiles. This was observed by the backup officers.

Ford did not want to transfer the drugs from the vehicles during daylight, and he invited Hickey and Crossman to return inside the house to wait until dark. Ford and the informant then went back into the house while Hickey and Crossman moved their vehicle off the street. The movement of the undercover vehicle signalled the backup officers to move in for the arrest.

Ford was standing in a doorway on the west side of the house holding the screen door open when Hickey and Crossman stepped out of their vehicle, drew their guns and police badges, identified themselves and ordered Ford to "freeze." Ford ran into the house, allowing the screen door to slam behind him. The record does not indicate whether he closed the inside door. Crossman ran to this door while Hickey ran around to the south side of the house where he located another door. Crossman then joined Hickey, and they kicked in the south door. Entering the room where the drugs were stored, they found appellee Love and

her child. Backup officers caught Ford attempting to escape through a window in the rear of the house.

All four occupants of the house were arrested and the drugs in the house and in the two vehicles were seized without a warrant.

The appellees moved to suppress all evidence obtained as a result of the warrantless arrest, search and seizure. After a hearing conducted pursuant to 17 A.R.S. Rules of Criminal Procedure, rule 16, the trial court ordered the evidence suppressed. The state appeals.

The facts of this case raise three separate issues:

First, were the police justified in entering the home as they did in order to make the arrests?

Second, did the state adequately show that the seizure of the marijuana in the house without a warrant was justifiable under the circumstances?

Third, did the state show that the warrantless search of the vehicles and seizure of the marijuana from them was constitutionally justifiable?

## I. THE ARREST.

■ A police officer who has probable cause to believe that a suspect has committed a felony may arrest the suspect in a public place without a warrant even if no exigent circumstances exist. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). However, we have held that a warrantless entry into a dwelling to effect an arrest is per se unreasonable unless exigent circumstances require police to act before a warrant can be obtained. *State v. Cook*, 115 Ariz. 188, 564 P.2d 877 (1977). In *Cook* we recognized those circumstances which the United States Supreme Court has explicitly held to be "exigent" within the meaning of the fourth

amendment. The hot pursuit of a fleeing felon is one such situation. The facts of this case bring it squarely within this exception. *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *State v. Davis*, 119 Ariz. 529, 582 P.2d 175 (1978).

■ We disagree with appellees' contention that the police created the exigent circumstances in this case. The undercover agents identified themselves as police officers and ordered Ford to "freeze." They were entitled to assume that Ford would obey this order. There is no evidence to suggest that the police intentionally precipitated Ford's flight in order to gain access to the house without a warrant.

Before they had identified themselves as police, the undercover agents were welcomed into the house by the appellees. Prior to the arrest the police could have reasonably expected that circumstances would allow them to return inside the house where they could then announce their identities and make the arrests without a warrant. *See Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). If necessary, they could then secure the house and obtain a warrant to enter the bedroom and seize the marijuana.*

Nor did the police violate the "knock and announce" requirement of A.R.S. § 13–1411 (currently A.R.S. § 13–3891). Ford was indicating his willingness to allow the agents into the house by standing with the door held open. The agents then announced that they were police, showed their badges, and stated their purpose—to arrest. It was totally appropriate for them to construe Ford's sudden flight into the house as a denial of permission to enter. *See State v. Davis, supra.* The subsequent action by the officers in breaking into the house was authorized by the terms of A.R.S. § 13–1411.

---

* "There is no requirement that a search warrant be obtained the moment police have probable cause to search. The rule is only that present probable cause be shown and a warrant obtained before a search is undertaken." *United*

States v. Watson, 423 U.S. 411, 449, 96 S.Ct. 820, 840, 46 L.Ed.2d 598, 624 (1976) (Marshall, J., dissenting); *see also State ex rel. Hyder v. Superior Court*, 114 Ariz. 337, 560 P.2d 1244 (1977).

## II. THE SEIZURE OF MARIJUANA FROM THE HOUSE.

■ As we indicated above, the officers were lawfully entitled to enter the premises in pursuit of Ford. The officers, Crossman and Hickey, gained entry through the south side door. That door led into the bedroom where the load of marijuana was stored. The officers found the load and Mrs. Love and her child in the room. Hickey arrested Mrs. Love and remained in the bedroom while Crossman went into the living room where he arrested the other defendants. Ford was arrested by other officers as he was attempting to escape through one of the back bedroom windows.

The arrest of Mrs. Love justified the search and seizure of the drugs in the bedroom. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The fact that officers already knew of the presence and location of the drugs does not invalidate the seizure. The legality of the seizure does not rest on "plain view" which requires inadvertent discovery. The seizure is legitimated by one of the exceptions to the warrant requirement—search incident to lawful arrest. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). *See also United States v. Santana, supra.*

The trial court erred in suppressing the evidence of marijuana seized from appellee Love's house.

## III. THE SEARCH OF THE VEHICLES.

At the conclusion of the hearing on the motion to suppress, the trial judge indicated that his decision whether to suppress the drugs found in the house would apply equally to the drugs found in the automobiles. But it is clear from the facts that the automobile search raises separate questions. The search had no connection with the hot pursuit of the suspects, and the marijuana was not in plain view after Ford closed the trunks of both cars.

■■ The state had the burden of proving to the satisfaction of the trial court that the search of the vehicles was lawful. 17 A.R.S. Rules of Criminal Procedure, rule 16.2(b). The record of the hearing contains no evidence indicating when the marijuana was taken from the vehicles, where the vehicles were located, whether the vehicles themselves were seized, how the police gained access to the locked trunks, or any of the circumstances surrounding the search.

Since the decisions announced in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) and *Coolidge v. New Hampshire, supra,* the law governing warrantless search of automobiles has continued to evolve in an intricate and complex pattern. Without adequate detailed evidence no court can satisfactorily determine the constitutionality of an automobile search. The trial court, therefore, did not abuse its discretion in suppressing the evidence obtained as a result of the automobile search.

The decision of the Court of Appeals is vacated. The order of the superior court suppressing the evidence seized from the house is set aside. The order suppressing the evidence seized from the automobiles is affirmed. The case is remanded to the superior court for further proceedings in conformity with this opinion.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS, J., concurring.

GORDON, Justice (dissenting):

I dissent from the majority opinion. Before this Court disturbs the findings of the trial court on a motion to suppress, the record must reveal clear and manifest error. That predicate has not been laid in the instant case, because the record is devoid of any proof of the circumstances of the seizure of the marijuana from the residence. Although it is clear that Mrs. Love was arrested in the room where the marijuana was found, there is no evidence that the contraband was in an area within her immediate control. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), *rehearing denied* 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124. The majority's

reliance on *Chimel, supra,* is, thus, inappropriate.

I, therefore, agree with the Court of Appeals and conclude that all of the marijuana was inadmissible because of insufficient evidence in the record to merit a reversal of the trial court's findings.