670 P.2d 737

The STATE of Arizona, Appellee,

v.

Jesus Lopez SILVA, Appellant.

No. 2 CA–CR 2680.

Court of Appeals of Arizona,
Division 2.

March 10, 1983.

Rehearing Denied May 31, 1983.

Review Denied July 19, 1983.

Certiorari Denied Nov. 28, 1983.

See 104 S.Ct. 500.

**340**

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

Bertram Polis, Tucson, for appellant.

## OPINION

BIRDSALL, Judge.

The appellant, Jesus Lopez Silva, was convicted of unlawful sale and possession for sale of cocaine, conspiracy and unlawful possession of heroin. He was sentenced to three concurrent terms of seven, and one of four, years imprisonment.

In this appeal he contends that he is entitled to a new trial because:

1) His motion to suppress should have been granted.

2) He was not properly indicted on one of the charges.

3) The prosecutor commented on his failure to testify.

4) Hearsay was improperly admitted.

5) A police report was improperly admitted.

6) A written record of narcotics transactions was improperly admitted.

7) There was inadequate foundation for admission of the narcotics.

8) A requested jury instruction should have been given.

We affirm.

The following facts were established at trial and are necessary to an understanding of our decision.

Department of Public Safety officers working undercover negotiated the purchase of two ounces of cocaine from William Howe. Howe left the motel room they were in to get the cocaine. Officers followed him to a convenience market where he met the appellant and another man. After they parted Howe returned to the motel room with one ounce of cocaine and the appellant was followed to his residence. The officers following the appellant were advised that Howe had delivered the cocaine and were directed to arrest the appellant and his companion. The companion was arrested in the driveway. Officer Gonzales walked to the carport and looking in a window of the house saw the appellant in the kitchen remove a baggie containing a white powder from the cupboard. The appellant dropped the baggie, Gonzales ordered him to "freeze", told him he was a police officer and went into the house and arrested him. After the residence was secured a telephonic search warrant was obtained and the house was searched.

### Motion to Suppress

■ The appellant contends that his arrest was unlawful and, for that reason, the search that followed. He relies on *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) which held the police could not make a warrantless, non-consensual entry into a home to make a routine felony arrest. The instant case is a far cry from *Payton.* The officers here were in hot pursuit, having probable cause to believe the appellant had just committed a serious felony. Officer Gonzales saw the appellant with what he believed to be cocaine which could easily have been destroyed if he did not act immediately. This was an exigent circumstance which made the entry into the home and the arrest lawful. *See State v. Love,* 123 Ariz. 157, 598 P.2d 976 (1979); *State v. Decker,* 119 Ariz. 195, 580 P.2d 333 (1978); *State v. Cook,* 115 Ariz. 188, 564 P.2d 877 (1977); A.R.S. §§ 13–3883, 13–

3888, 13–3891. The appellant contends Officer Gonzales failed to knock and announce his presence. Any failure to comply with the "knock and announce" provisions of A.R.S. § 13–3891 is excused by the exigent circumstances present here. However, the officer did announce he was a police officer and "advised him if I could come into his house."

### The Indictment

■ The foreman of the grand jury which indicted the appellant failed to read the words "for sale" which was part of the charge in Count 7 of the indictment both at the beginning and end of the session. However, both the minutes of the grand jury and the indictment contain these words and the grand jurors heard evidence that the cocaine was "possessed for sale," giving rise to the charge in Count 7. There is no merit in the appellant's argument that he was not indicted on that charge.

### Prosecutor's Comment

■ In his opening statement the prosecutor said that Officer Gonzales would testify that when the appellant was asked about the baggie he dropped in the kitchen the appellant said, "I never saw it before in my life." This statement had been ruled admissible in a pretrial hearing, although the underlined words "in my life" were not a part of the record in that hearing. When the officer testified at trial, the words "in my life" were not included in his account of the appellant's statement. Appellant moved for a mistrial following the prosecutor's opening statement, claiming that this constituted a comment on the appellant's right to remain silent. He contends that mention of his statement made the jury wonder why he did not testify. As the state argues, if we were to accept that contention, no statement of a defendant would be admissible unless he testified. The appellant's reasoning is ridiculous.

■ The appellant further claims there is a much different meaning in what he actually said, "I've never seen it", than in the statement "I never saw it before in my life." We fail to see this difference and also reject that argument.

### Improper Evidentiary Rulings

■ The negotiations in the motel room involving two undercover officers and William Howe were monitored and recorded. One of the undercover officers was deceased at the time of trial, and Howe elected to claim his privilege against self-incrimination. The taped conversation was admitted with no other testimony than the foundation of another officer who identified the voices and described the recording devices and how they were arranged. The appellant claims the tape was inadmissible hearsay. He is wrong. None of that evidence was hearsay. Howe's statements are within Rule 801(d)(2)(E), Rules of Evidence, 17A A.R.S., the co-conspirator rule. The officers' statements were not hearsay since they were not offered to prove the truth of the words spoken. Rule 801(c), Rules of Evidence, 17A A.R.S. The tape was admissible.

■ The appellant contends that the admission of the tape-recorded conversation in the motel room violated his Sixth Amendment right of confrontation. Although the trial court initially indicated some agreement with this position, upon being advised by the state that Howe would be available in Tucson for interview and cross-examination if the appellant desired, the court changed its preliminary ruling. We do not find the admission of the tape would violate the confrontation clause in any event. The appellant was not deprived of any right of confrontation on the issue of whether the conversation actually occurred and what was said by each of the participants. *See Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

■ We have examined the transcript of the tape recording which was admitted in evidence. No part of the conversation directly implicates the appellant. He is never mentioned by name. In the conversation Howe refers to another "guy" who is to supply the cocaine and calls him on the

room phone to arrange the meeting. When Howe leaves the room the agents' conversation is recorded. Finally the recording covers the conversation when Howe returns and his arrest. From this it can be inferred the appellant was the "other guy," but there was evidence of the conspiracy without the tape recording, i.e., the evidence of the meeting at the convenience market, the place arranged during the telephone call, the delivery of the narcotics and the amount thereof and the seizure of the other "half" of the proposed sale at the appellant's home upon his arrest. The co-conspirator's statements are clearly during the course of and in furtherance of the conspiracy. It further appears from the record that when produced by the state, Howe advised the appellant's counsel he would invoke his Fifth Amendment rights and not testify. By his own choice he became unavailable. *See also Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The trial court also admitted a part of the deceased officer's police report pertaining to the chain of custody of the narcotics. In the report the officer said he had taken the evidence to the crime lab for examination. This evidence was relevant only as foundation for admission of the narcotics and the results of the laboratory analysis. It need not even have been admitted for the jury since the court and not the jury is concerned with the admissibility of the other evidence, the narcotics and laboratory analysis. Rule 1008, Rules of Evidence, 17A A.R.S.[1] *See also State v. Simmons,* 131 Ariz. 482, 642 P.2d 479 (App.1982). That part of the report was not rendered inadmissible by Rule 803(8)(B).[2] As the state argues, it was also admissible under Rule 803(24).[3]

One of the evidentiary items seized at the appellant's home was a notebook containing records of narcotics transactions. It was, no doubt, most damaging proof of the appellant's crimes. No direct evidence showed whose handwritten entries appeared in the book. The appellant claims such foundation was necessary. We disagree. This argument goes to the weight, not the admissibility of the book. *See State v. Greenawalt,* 128 Ariz. 388, 626 P.2d 118 (1981), cert. denied sub. nom., *Tison v. Arizona,* 454 U.S. 848, 102 S.Ct. 167, 70 L.Ed.2d 136 (1981). The appellant also contends that since the notebook is evidence of prior bad acts it is inadmissible. Of course, that is the very reason for its admission, to show that the appellant was a narcotics dealer.

The appellant's last objection pertaining to evidentiary rulings is the admission of the narcotics. This objection is frivolous. One witness testified there was a change in the cocaine from when it was first observed, its consistency had changed from "powdery" to "rock-like", but he also testified that weather conditions can pro-

---

1. "When the admissibility of other evidence of contents of writings, recordings, or photographs under these rules depends upon the fulfillment of a condition of fact, the question whether the condition has been fulfilled is ordinarily for the court to determine in accordance with the provisions of Rule 104. However, when an issue is raised (a) whether the asserted writing ever existed, or (b) whether another writing, recording or photograph produced at the trial is the original, or (c) whether other evidence of contents correctly reflects the contents, the issue is for the trier of fact to determine as in the case of other issues of fact."

2. "... (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, ..."

3. "A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant."

duce such a change. Again this goes only to the weight and not the admissibility of the evidence. *State v. Greenawalt, supra.* The prosecution is not required to exclude every remote possibility of tampering with evidence which is, of course, the inference appellant would like to draw. *State v. Hardy,* 112 Ariz. 205, 540 P.2d 677 (1975).

 Finally, the appellant contends he was entitled to have the following instruction given:

"The defendant is not on trial for any act or conduct not alleged in the indictment."

His theory was that this would properly limit the jury's use of the notebook. The problem is the instruction did not do that, and, standing alone, without further explanation, the instruction is either meaningless or could even be misleading.

If the appellant wanted a limiting instruction he should have requested one. *See State v. Taylor,* 127 Ariz. 527, 622 P.2d 474 (1980); *State v. Hernandez,* 7 Ariz.App. 200, 437 P.2d 952 (1968). The court was not required to give an incomplete instruction. *See Watson Const. Co. v. Amfac Mortg. Corp.,* 124 Ariz. 570, 606 P.2d 421 (App. 1979). The jury was properly instructed on the crimes which were charged, the elements of each and the forms of verdict. *See State v. Hernandez, supra.*

Affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.