512 P.2d 863

**The STATE of Arizona, Appellant,**

**v.**

**Robert CALDWELL, Jr., and Judith Lynne Caldwell, Appellees.**

**No. 2 CA–CR 317.**

Court of Appeals of Arizona, Division 2.

July 26, 1973.

Rehearing Denied Sept. 4, 1973.

**332**

Gary K. Nelson, Atty. Gen., Phoenix, Dennis DeConcini, Pima County Atty., by Jerry Schmidt, Deputy County Atty., Tucson, for appellant.

Messing, Hirsh & Franklin, P. C. by Robert J. Hirsh, Tucson, for appellees.

KRUCKER, Judge.

This is an appeal by the State from an order of the Pima County Superior Court granting a motion to suppress a portion of evidence. The defendants were indicted and charged with having committed the crime of possession of marijuana for sale in violation of A.R.S. § 36–1002.06. They were arraigned in the Superior Court of Pima County on February 3, 1972, at which time they entered a plea of not guilty. In August, 1972, defendants filed a motion to suppress certain evidence, and in September, 1972, the following order was entered:

> ". . . that said Motion to Supress be, and hereby is, denied as to all of the evidence involved in said motion, except the evidence discovered north of the residence at 11651 Calle Aurora, Tucson, Arizona, and as to this evidence the Motion to Supress is granted."

The rather bizarre facts leading up to this appeal are as follows. Judith L. Caldwell rented a 1972 Chevrolet automobile from Dollar-A-Day Rent-A-Car Systems on or about November 5, 1971, for a period of 24 hours. When the vehicle was not returned after approximately five days, the rental agency attempted to locate Mrs. Caldwell. They contacted the Tucson Police Department to file a theft report, which could not be accepted. However, the police said they would contact the agency if the car or other information was discovered.

The police did contact the rental agency and spoke with Mr. Burns, the agent, telling him that Mrs. Caldwell, or information about her, could be found at an address known as 11651 Calle Aurora. Mr. Burns went to that address, knocked on the door, and /received no answer. He walked to

the rear of the house in an attempt to locate the vehicle and found it under a tree at the back of the house. He then went to a neighbor's home and called the sheriff's department as he did not want to appear to be stealing the car. When the sheriff's deputies arrived, Mr. Burns called the agency for an extra set of keys for the vehicle. The deputies went to the house, knocked, and when Mrs. Caldwell answered, they called Burns over to the house. He and Mrs. Caldwell engaged in a conversation as to her failure to return the car. She offered to pay up the rental and stated that she would like to keep the car, which request was refused. The vehicle was inspected, mileage computed and the bill was paid.

The car was returned to the rental agency. Mr. Burns asked the clean-up man to check the trunk for missing tools and accessories. When the trunk was opened, brick-shaped objects were found and narcotics officers were called. An examination of the objects found in the trunk disclosed 110 bricks of marijuana, identified by the narcotics officers. While still at the rental agency, narcotics officer Lugo was informed by the deputies who had been at the Caldwell residence in the morning that they and Mr. Burns had smelled marijuana while in the house. Officer Lugo prepared an affidavit for a search warrant, referring to the marijuana found in the automobile rented to Judith Caldwell and the odor of "burnt marijuana" in the house.[1] A warrant to search "the premises known as 11651 Calle Aurora and the surrounding sheds" and "a 1971 Porsche" was obtained on that same date, November 12. The officers, pursuant to the search warrant, went to the premises where they found a kilo brick press with marijuana debris, which was seized. The press was found sitting against the north side of the house. The officers also seized from within the house two cancelled checks signed by Judith Caldwell.

The following day the sheriff's office received a phone call from a Mrs. Shubert, who lived near the searched premises, who stated that her 12-year-old son had found what appeared to be a brick of marijuana in the desert behind the Shubert home. A deputy was dispatched to investigate and upon arriving at the Shubert home identified the brick as marijuana. The Shubert boy led the deputy and narcotics officer to where he had found the bricks, an area approximately 100 yards north and behind the searched premises. There they observed approximately four boxes, each with 12 or 13 kilos to a box. Three boxes were under a tree and the fourth was approximately 25 yards away. In addition to the marijuana, the boxes contained pots, pans, containers, and a substance that appeared to be hashish. The house was sepa-

---

1. The facts on which the search warrant was based were set forth in the affidavit for a search warrant as follows:

"On 12 November 1971 at 1215 hours, your affiant was called to the Dollar A Day Rent-A-Car agency where a Michael Burns and a Mrs. Benny had located a large amount of marijuana in a vehicle belonging to the agency which they had earlier repossessed at 11651 Calle Aurora. Lt. Dierking and Agent Lugo responded by going to the Dollar A Day Rent-A-Car agency and inspected the trunk of the vehicle and located a large amount of marijuana. Mr. Burns and Mrs. Benny related that a Judy Caldwell had rented the car and had failed to return it according to the contract. That Mr. Burns in company of Sheriff's Deputies McIntosh and Lindsey went to the above address to repossess the vehicle and that they were invited into the house by Judith Caldwell. That while inside the home the two sheriff's deputies and Mr. Burns detected the strong odor of burnt marijuana.

\*    \*    \*    \*    \*

Mr. Burns states he is acquainted with the odor of burning marijuana. The two Sheriff's Deputies personally informed Agent Lugo, your affiant, that they are trained to detect this peculiar odor as police officers and that they are positive that they smelled burnt marijuana while at the residence.

Your affiant has grounds to believe that the people residing at 11651 Calle Aurora are in unlawful possession of marijuana, circumstances dictating."

rated from the desert area by a barbed wire fence and a fenced corral.

The questions presented to us for decision are:

(1) Whether the seizure of the marijuana brick press was lawful pursuant to the issuance of the search warrant and

(2) Whether the seizure of the four boxes in the desert was lawful.

## MARIJUANA BRICK PRESS

■ Appellees complain of overbreadth of the warrant. We do not agree. A large quantity of marijuana had been found in the car rented to Judith Caldwell, and one could reasonably believe that defendants were storing other large quantities for sale. Certainly another automobile is a possible storage place as well as surrounding sheds.[2]

■■ Appellees also contend the search exceeded the scope of the warrant. A search of premises, however, may include all property necessarily a part of the premises and so inseparable as to constitute a portion thereof. Massey v. Commonwealth, 305 S.W.2d 755 (Ky.Ct.App.1957) (a search of an automobile at rear door of service station described in affidavit); Ingram v. Commonwealth, 200 Ky. 284, 254 S.W. 894 (1923) (search of garden located 15 feet from house described in warrant). The area behind the house in the instant case where the brick press was found is reasonably within the meaning of the word "premises".

■ It is well settled that objects falling in the plain view of an officer who has a right to be in a position to have that view are seizable. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067 (1968); Musgrove v. Eyman, 435 F.2d 1235 (9th Cir. 1971); State v.

Pine, 8 Ariz.App. 430, 446 P.2d 940 (1968). Instrumentalities of a crime, such as the marijuana brick press herein, may be seized because there is a nexus between the item and criminal behavior. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

Here, the offense was possession of marijuana for sale. The fact that marijuana debris was found on the press at the time of seizure serves to strengthen the connection of the item with criminal activity.

■ Of course, the plain view doctrine operates only when the officers have prior justification for an intrusion and come inadvertently upon a piece of evidence. Coolidge v. N. H., 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Since there was probable cause in the instant case to justify issuance of the search warrant, the officers were lawfully on the premises at 11651 Calle Aurora. Appellees claim that the smell of marijuana is not sufficient to establish probable cause and that appellant's attempt to establish a nexus between the odor and the marijuana found in the rental car is without merit. However, although odors may not be sufficient to conduct a warrantless search, Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), odors associated with contraband that lead a reasonable person to believe a crime has been committed are a valid basis on which to seek a warrant. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Miller v. Sigler, 353 F.2d 424 (8th Cir. 1965); United States v. Mullin, 329 F.2d 295 (4th Cir. 1964). In Johnson, the court stated:

"If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it

---

2. *See, e. g.,* United States v. Combs, 468 F.2d 1390 (6th Cir. 1972), cert. denied, 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973), wherein a search warrant was issued for the house, all outbuildings and vehicles including adjacent properties used by defendant's father on the strength of the officer's affidavit that he had seen a large number of firearms and ammunition in the house. The court held there was sufficient information to uphold the breadth of the warrant.

is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character." 333 U.S. at 13, 68 S.Ct. at 369.

In the instant case, the odor of marijuana together with the discovery of the marijuana in the rental car established probable cause.

Contrary to appellees' contention, whether the officers smelled *burning* or *burnt* marijuana does not deserve the significance they try to attach to the distinction. We are concerned here only with whether there was probable cause for the issuance of a search warrant, not whether officers, fearing evidence was about to be destroyed, could lawfully conduct a warrantless search or arrest. *See*, State v. McGuire, 13 Ariz.App. 539, 479 P.2d 187 (1971).

## FOUR BOXES BEHIND THE HOUSE

 In Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), the Supreme Court announced what is known as the "open fields" doctrine, that the Fourth Amendment protection is not extended to open fields. The concept of where a person may expect protection from unreasonable searches and seizures has subsequently been modified so that such protection now depends on whether a person has a reasonable expectation of privacy in a particular place. United States v. Hitchcock, 467 F.2d 1107 (9th Cir. 1972).

The courts, therefore, must determine whether a defendant has exhibited a subjective expectation of privacy and whether the expectation is one that society may recognize as reasonable. It has been said that the expectation of privacy is not reasonable when activities are carried on in an open field. State v. Stanton, 490 P.2d 1274 (Or.App.1971). Each case must rest on its own facts, however.

In the instant case the four boxes containing marijuana were discovered in an area approximately 100 yards from the house beyond a fence and a corral area under some trees. Of special significance is the fact that the boxes were first discovered by the neighbor boy. This indicates that the boxes were in an area where someone from the general public was apt to wander. Under these circumstances, it would be unreasonable for defendants to assume that contraband in such an area would not be noticed and reported by some member of the public and investigated by the police. *See*, State v. Stanton, supra. Thus, the protection of the Fourth Amendment, which normally would require a search warrant, does not come into play.

For the foregoing reasons, the judgment below is reversed.

HATHAWAY, C. J., and HOWARD, J., concur.