627 P.2d 698

The STATE of Arizona, Appellant,

v.

Gilbert Leonard SANCHEZ, and Tony Galaz Valenzuela, Appellees.

2 CA–CR 1840.

Court of Appeals of Arizona, Division 2.

May 28, 1980.

Rehearing Denied July 2, 1980.

Review Granted Sept. 4, 1980.

Stephen D. Neely, Pima County Atty. by Barbara LaWall, Deputy County Atty., Tucson, for appellant.

Bertram Polis, Tucson, for appellees.

## OPINION

HATHAWAY, Chief Judge.

The sole issue raised in this appeal is whether the "knock and announce" requirements of A.R.S. Sec. 13–3916(B) are violated when police officers, in executing a search warrant, cut a locked gate in a fenced residential front yard without announcing their identity and purpose.

Police officers received information from a citizen informant, who wished to remain anonymous, that a large quantity of marijuana was in a house in Tucson. The officers located the house from the informant's description and began surveillance. The house was surrounded by a chain link fence with a locked gate. The officers observed that the gate was always kept locked and that anyone desiring to gain admittance had to wait for someone from the house to

open the gate. After a day and a half of surveillance, the officers obtained a search warrant. In their planning prior to executing the warrant, the officers decided to cut the lock on the gate with bolt cutters. In executing the warrant, the lock was cut and the officers, none of whom were uniformed police officers, entered the yard without announcing their identity or purpose. Defendants/appellees moved to suppress the marijuana seized in the house on the ground that the officers violated A.R.S. Sec. 13–3916(B) when they cut the lock and entered the yard without announcing their identity or purpose. The trial court granted the motion and we affirm.

The statute in question states:

"B. An officer may break into a building, premises, or vehicle or any part thereof, to execute the warrant when:

    1. After notice of his authority and purpose, he receives no response within a reasonable time.

    2. After notice of his authority and purpose, he is refused admittance."

At the suppression hearing, the state conceded that the officers did not comply with the statute before cutting the locked gate and entering the yard. The state maintains that compliance with the statute was not required because the gate was not part of the premises.

When construing the language in a statute, the rules of construction require that a court examine the context, subject matter, effects, consequences and the spirit and reason of the law. *Castregon v. Huerta*, 119 Ariz. 343, 580 P.2d 1197 (1978). In addition, particular words in a statute must be construed in conjunction with the full text of the statute. *Golder v. Department of Revenue, State Board of Tax Appeals*, 123 Ariz. 260, 599 P.2d 216 (1979).

We first note that A.R.S. Sec. 13–1446(B), the predecessor statute to A.R.S. Sec. 13–3916(B), limited the knock and announce requirement to inner and outer doors of houses. In 1970, the legislature changed the statute to read "building, premises, or vehicle." It is presumed when the legislature changes the language of a statute that it intended to make a change in existing law. *McCloe v. Utah Home Fire Insurance Company*, 121 Ariz. 402, 590 P.2d 941 (App.1978). By changing the statute therefore, it would appear the legislature intended to expand the knock and announce requirement beyond doors to houses.

The Arizona Supreme Court in defining "premises" in the context of a search warrant has stated that it may include property that is a logical part of the residential premises. *In re One 1970 Ford Van, I.D. No. 14GHJ55174, L. No. CB 4030*, 111 Ariz. 522, 533 P.2d 1157 (1975). This court in *State v. Caldwell*, 20 Ariz.App. 331, 512 P.2d 863 (1973), stated:

"A search of premises, however, may include all property necessarily a part of the premises and so inseparable as to constitute a portion thereof." 20 Ariz. App. at 334, 512 P.2d 863.

There we held that an area immediately behind a dwelling was a part of the premises.

It is clear, therefore, that the term premises as used in A.R.S. Sec. 13–3916(B) encompasses more than just a residence and can, depending on the circumstances, include a locked gate in a fence surrounding a residence.[1] Where the fence and gate are so far removed from the residence that the occupants could not reasonably be expected to hear the announcement, the officers would be required to knock and announce at the residence. This is analogous to the outer door of an apartment building being far distant from the door of the particular apartment to be searched. *U.S. v. Murrie*, 534 F.2d 695 (6th Cir. 1976). Here, how-

---

1. We fail to see how the dissent can reasonably claim that the word "premises" in the statute defines a "people container." Cf., *U.S. v. Long*, 449 F.2d 288 (8th Cir. 1971) [trash barrel located outside place of business considered as part of "premises"] and *State v. McClelland*, 215 Kan. 81, 523 P.2d 357 (1974) [person standing between sidewalk and curb considered to be on the "premises."]

ever, the record indicates that no attempt at all was made by the officers to announce their presence and purpose at the locked gate.[2] In fact, as noted above, during the planning for execution of the warrant, no consideration was ever given to making an announcement at the gate. The state presented no evidence to show that it would have been a futile gesture to knock and announce at the locked gate because the gate was too far away from the residence for the occupants to have heard the announcement. It must also be noted that the gate was always kept locked. This indicates that the occupants of the house had a "reasonable expectation of privacy" in their front yard an expectation that society would accept as reasonable. *Katz v. U.S.,* 389 U.S. 347, 83 S.Ct. 507, 19 L.Ed.2d 576 (1967).[3]

The state next claims that even if the locked front gate is part of the premises, exigent circumstances existed which would excuse non-compliance with the statute. It cites cases from other jurisdictions for this proposition but no authority from Arizona. In fact, the authority in this state is contrary to the state's position. *State v. Cook,* 115 Ariz. 188, 564 P.2d 877 (1977); *State v. Eminowicz,* 21 Ariz.App. 417, 520 P.2d 330 (1974). In *State v. Eminowicz,* the court stated:

> "Where the legislature has enacted a statute dealing with execution of a search warrant which is clear and unambiguous on its face, we as a court may not weigh the reasons for and against such a statute—that is the province of the legislature. We are aware of other states with statutes similar to A.R.S. Sec. 13–1446 which have made judicial exceptions to their statutes. 'However, unlike California, this court has not by a series of decisions engrafted a judicial exception to the statute.' *State v. Mendoza,* 104 Ariz.

395 at 398, 454 P.2d 140 at 143. Accordingly, we decline now to engage in judicial legislation. If a remedy is needed, it is for the legislature to form one." 21 Ariz.App. at 419.

The Supreme Court in *Cook,* supra, quoted the above with approval. It is noted that subsequent to *Cook* and *Eminowicz,* supra, the legislature enacted the new criminal code and that A.R.S. Sec. 13–1446 was renumbered as 13–3916 and adopted as part of the new code without change. It must be presumed that the legislature had knowledge of the judicial construction of A.R.S. Sec. 13–1446 and that it intended the renumbered statute to have the same meaning as previously stated by judicial construction. *Arizona Press Club, Inc. v. Arizona Board of Tax Appeals, Division 1,* 113 Ariz. 545, 558 P.2d 697 (1976); *State v. Govorko,* 23 Ariz.App. 380, 533 P.2d 688 (1975). The state's reliance on *State v. Davis,* 119 Ariz. 529, 582 P.2d 175 (1978), is misplaced. The court there was considering A.R.S. Sec. 13–1411, now A.R.S. Sec. 13–3891, which deals with entering a building in order to make an arrest without a warrant. In *Davis,* supra, the officer was in uniform, had confronted the defendant face to face and had requested his driver's license. When the defendant entered his residence, the officer followed. The court approved this action on the grounds that the defendant was aware of the officer's purpose when he slammed the door. The court stated that the defendant knew he was about to be arrested for criminal behavior.

The state finally argues that "The purpose of the exclusionary rule is not furthered by suppression of evidence seized in good faith pursuant to a valid warrant." It requests this court to weigh the equities of "punish[ing] the police and public and re-

---

2. The question is not before us and we express no opinion as to whether, after complying with the statute at the locked gate and receiving no response, the officers must again knock and announce at the front door of the residence where the residence is so located that the occupants reasonably should have heard the first announcement.

3. Conversely, had the gate not been locked there would have been no occasion to "break into" the premises, (contrary to the assertion in the dissenting opinion, infra) and the knock and announce statute would have been inapplicable until the officers reached the residence.

ward[ing] the Defendant." This is a matter better left to the legislature and we decline to address the issue.

Affirmed.

RICHMOND, J., concurs.

HOWARD, Judge, dissenting.

I am unable to agree with the majority and would vacate the order of suppression. I believe the majority is giving a meaning to the word "premises" that was not intended by the legislature. The meaning of the word should not be equated with the area within which a search is authorized by a warrant. The majority's opinion does not advance the purpose of the knock and announce statute and creates an impossible situation for law enforcement officers.

How do you give notice at the gate? Do you shout at the house? Blow a whistle? Or is it incumbent upon the officers to have a bullhorn as was suggested to the trial court here?

How far away from the house must the gate be to dispense with the notice requirement? How can you tell that is too far away?

There are more questions. If the officer jumps over the fence instead of breaking the lock, is he breaking into the premises? And what difference does it make if the gate is locked or unlocked? If the gate is analogous to the door of a house, we know that an officer cannot open the door to a house and enter without first complying with the statute.

Application of the majority opinion can lead to bizarre and undesirable results. Suppose the officer comes to execute a search warrant at the residence of Boris Badinoff. Boris' house is surrounded by a fence with a locked gate. Boris is inside listening to the radio. The officer arrives at the gate which is only 20 feet from the front door. Seeing the gate is locked the officer cups his hands, places them to his mouth and shouts, "Hello-o-o-o in there. This is the police. I have a warrant to search your house." Boris doesn't hear the officer because the radio is too loud and his evaporative cooler is noisy. Receiving no answer, the officer tears the gate down and rushes up to the front door. There is a screen door that is latched. He tears the screen door off because in *State v. Sanchez* and *Valenzuela* the court said that after he receives no answer he has satisfied the statute and can break in. The door to the house is locked. He kicks it in to face a dumbfounded Boris. If the officer had rung the doorbell, Boris would have heard it. Is this what the legislature intended? I cannot believe that the intent of the legislature was to take an uncomplicated knock and announce statute and convert it into such a fiendish labyrinth.[1] I believe that the legislature, when it used the phrase ". . . building, premises or vehicle" was attempting to cover the many types of containers in which people are housed or might be located including tents, mobile homes, and recreation vehicles. The legislature used the word "premises" to define a "people container," such as a tent or a mobile home, which might not to some minds meet the definition of a building.

---

1. In a footnote, the majority says that it is not deciding whether the police must knock and announce after they receive no response at the fence where the fence is so located that the occupants reasonably should have heard the first announcement. Again the majority is un- necessarily creating future legal disputes over the question of whether ". . . the occupants should reasonably have heard the first announcement." The decision would engraft one more rule on what should be a very simple and easily understood statute.