507 So.2d 558 (1986)
George Latham KORRECKT
v.
STATE.
7 Div. 468.
Court of Criminal Appeals of Alabama.
December 9, 1986.
Rehearing Denied January 13, 1987.
On Return to Remand May 12, 1987.
*560 J. Stephen Salter of Groenendyke & Salter, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Beth Slate Poe, Asst. Atty. Gen., for appellee.
PATTERSON, Judge.
Appellant, George Latham Korreckt, was charged, in a three-count indictment, with trafficking in cocaine, in violation of § 20-2-80, Code of Alabama 1975; possession of cocaine, in violation of § 20-2-70; and possession of marijuana, in violation of § 20-2-70. A jury returned a verdict of guilty on all counts. Pursuant to § 20-2-80(2)(a), which is the punishment provision for trafficking in cocaine, the trial court sentenced appellant to a term of twenty-one years in the penitentiary and fined him $50,000.
On September 6, 1984, officers of the Talladega County Sheriff's Department executed a nighttime search warrant at appellant's residence. The search ultimately resulted in the discovery of 135 grams, or approximately 4 ounces, of cocaine. The authorities discovered 10.532 grams of cocaine in a red plastic box located inside a fireplace insert in appellant's home. This box also contained a quantity of inositol (a common cocaine dilutant) and various types of paraphernalia. Appellant was placed under arrest and informed of his Miranda rights. A search of appellant's person resulted in the discovery of a blue plastic straw, which contained cocaine residue; $606 in appellant's right rear pants pocket; and $836 in appellant's left rear pants' pocket. Two clear plastic bags containing marijuana seeds were discovered in the freezer located in appellant's residence. A white purse was discovered in appellant's bedroom, and inside this purse was a black and green case containing cocaine residue, a corner of a plastic bag containing a small amount of cocaine, and a plastic straw containing cocaine residue.
A jeep truck (hereinafter referred to as "truck"), parked outside appellant's residence, was searched at the time the warrant was executed. In the bed of this vehicle, the authorities discovered a thermos bottle in a half-full sack of chicken feed. The thermos bottle contained approximately 3.5 ounces of cocaine. Recovered from the cab of the vehicle was a bank bag containing approximately $3,500 in cash, various receipts and papers with appellant's name on them, and .02 gram of marijuana. A set of scales, wrapped in a pillow case, was also found in the cab of the truck.
Appellant testified at trial in his own defense. According to appellant, someone had "jimmied open" a set of French doors at the rear of his house earlier that day. As a result of this incident, appellant had gathered up all the paraphernalia in the house and placed it in his wife's purse in order to eventually destroy it. Appellant admitted that in the past he had used marijuana and cocaine, but had not done so for some time before the search of his residence. Appellant stated that he had no idea how the box containing the cocaine got into his fireplace insert. Appellant also presented evidence that established the ownership of the truck in the name of Mrs. Michael Medlock. Appellant stated that he and Mr. Medlock had towed appellant's truck in for repair work and that Medlock had allowed him to keep the truck while appellant's truck was being repaired. Appellant admitted that the bank bag, its contents, and the scales belonged to him. According to appellant, he removed the bank bag and scales from his vehicle and placed them in the truck, when his vehicle was taken to Odenville for repairs. Appellant testified that he and Medlock had been baling hay in the fields, and the money in the bank bag was payment for hay he had sold that day. The other receipts in the bank bag pertained to his farming operations. Appellant purchased the scales to weigh grain samples in connection with his farming operations. According to appellant, he kept the bank bag and scales in the truck to keep his young sons out of those particular items. Appellant denied knowledge of how the cocaine in the thermos got inside the chicken feed sack.

I
Appellant first contends that the search of the truck located in his backyard was *561 not expressly authorized by the search warrant and, thus, the evidence seized as a result of the search should have been suppressed. The State asserts that appellant lacks standing to contest the search of the vehicle. We need not reach a determination on the standing issue because we find that the search was proper.
The search warrant issued by Judge Coleman directed the officers to conduct a "nighttime" search "on the person of Latham Korreckt and the premises heretofore described and in and upon the above described premises for the following property: cocaine." The search warrant did not contain a description of any buildings or other structures located on the property, nor did it specifically make reference to any vehicles thereon. The "heretofore described" language was referring to that part of the warrant which provided directions to appellant's home. This language did not specifically mention any structures or vehicles; it merely provided information regarding the location of appellant's property. Appellant argues that the term "premises" did not authorize a search of a vehicle parked behind appellant's house, in his backyard. It is appellant's stated position that the term "premises," as used in the search warrant, authorized a search of the dwelling house proper, and nothing more.
We view appellant's arguments as two-fold: first, does a search warrant which directs the search of "the premises" at a specified address authorize police authorities to search areas other than the dwelling house proper and second, if the search warrant authorizes a search of places other than the dwelling house proper, may the police conduct a search of a vehicle, which is located within the authorized search area, belonging to a third party but under the control of the property owner?

A
Many state and federal courts have considered this first issue and have concluded that where the vehicle is situated on the "premises" of a stated address, a search of that vehicle is authorized by the search warrant for a search of the "premises." The basis of these holdings appears to turn on the definition of "premises."
In 2 W. LaFave, Search and Seizure § 4.10 (1978), it is generally stated "that a search warrant authorizing the search of certain premises covers automobiles found on those premises." Numerous cases are cited in support of this proposition; however, the rationale underlying the basis of this conclusion was not developed in the treatise. Id. at n. 39. The majority of federal court rulings on this issue flows from a Fifth Circuit opinion United States v. Napoli, 530 F.2d 1198, 1200 (5th Cir.), cert. denied, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976),[1] which held that a search warrant authorizing a search "on the premises known as 3027 Napoleon Avenue" permitted the search of a camper parked close to the building in the driveway of the premises. Among the authorities cited in support of Napoli's holding is United States v. Long, 449 F.2d 288 (8th Cir.1971), cert. denied, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 247 (1972). Napoli, 530 F.2d at 1201.
In United States v. Long, 449 F.2d at 294, the court upheld the search of a trash barrel located outside the building described in the search warrant, where the warrant directed a search of "the premises commonly known as Tocco Bros. Sea Food Co." The court held "that for all practical purposes this trash can was a part of the *562 `premises' to be searched and there is no merit to Tocco's claims that it was not at the place described in the search warrant." Id. The Long court's apparent conclusion was that the term "premises" includes areas other than the specified building designated by the search warrant. The area specifically encompassed by the term "premises" was not, however, further developed.
Decisional law from state courts has further developed and defined the area which may be searched when the search warrant directs the search of "premises" at a stated address. In State v. Roach, 322 So.2d 222, 226 (La.1975), the warrant authorized the search of the "premises" at a stated address. The court held that the search warrant "must reasonably be interpreted to permit a search of the dwelling house proper, the garage, and any other outbuildings within close proximity of the house proper that one normally associates with and includes within the word `house' or `premises.' "See authorities cited therein. See also State v. Brouillette, 465 So.2d 124 (La.App. 4th Cir.1985). In State v. Caldwell, 20 Ariz.App. 331, 512 P.2d 863, 865 (1973), the search warrant directed a search of "the premises" of a specified address. The court held that "[a] search of premises, however, may include all property necessarily a part of the premises and so inseparable as to constitute a portion thereof." Id. at 334, 512 P.2d at 866. See also State v. McClelland, 215 Kan. 81, 523 P.2d 357 (1974) (which adopted the holding of Caldwell).
The cases cited by Professor LaFave, supra, at n. 39, also support the conclusion reached in Roach and Caldwell. In In re One 1970 Ford Van v. State, 111 Ariz. 522, 523, 533 P.2d 1157, 1158 (1975), the Arizona Supreme Court, relying on Caldwell, held the following: "A search of the premises may include property that constitutes a logical part of the residential premises.... This vehicle was situated next to the house and is within the legal concept of curtilage."
In Massey v. Commonwealth, 305 S.W.2d 755, 756 (Ky.1957), the search warrant directed a search of "a house, building, or premises owned or controlled by Homer Massey and known as New Standard Service Station...." No vehicles were identified by the warrant. Id. The court upheld the search of a vehicle parked at the rear door of the service station, stating that "the search of the premises has been held not to be confined only to those buildings contained in the description, but includes all property necessarily part of the premises or so inseparable as to constitute a portion thereof." Id. See also McCissell v. Commonwealth, 305 S.W.2d 756 (Ky.1957) (decided on authority of Massey); State v. Reid, 286 N.C. 323, 210 S.E.2d 422 (1974) (decided on authority of Massey); State v. Logan, 27 N.C.App. 150, 218 S.E.2d 213 (1975) (decided on authority of Reid). The remaining cases cited by Professor LaFave, at n. 39, involve search warrants in which the authorities were directed to search the dwelling or building and the curtilage. Joyner v. State, 303 So.2d 60 (Fla.Dist.Ct.App.1974), cert. discharged, 325 So.2d 404 (Fla.1976); Bellamy v. State, 134 Ga.App. 340, 214 S.E.2d 383 (1975); Leslie v. State, 294 P.2d 854 (Okla. Crim.1956). In those cases, it was held that automobiles found within the curtilage were properly subjects of the search warrant.
Before concluding our discussion of this issue, we cite with approval the language of United States v. Percival, 756 F.2d 600, 612 (7th Cir.1985), wherein the court stated:
"Although a car is less fixed than a closet or cabinet, however, it is no less fixed than a suitcase or handbag found on the premises, both of which can readily be searched under [United States v.] Ross [, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)] if capable of containing the object of the search. Professor LaFave asserts, and we agree, that the better practice would be to include a description of the occupant's vehicle in the warrant when the warrant is intended to extend to the car. LaFave [Search and Seizure § 410] at 159. We do not believe, however, that such a practice is mandated in every instance by the Fourth Amendment."
*563 We have reviewed a myriad of cases which deal with the conceptual boundaries of the term "premises," and we are clear to the conclusion that this term encompasses the areas, commonly referred to in search and seizure cases, as the curtilage of a dwelling. In the instant case, the truck was parked in appellant's backyard, directly behind his back door. The vehicle was clearly within the curtilage of the dwelling and, therefore, on the "premises" described by the search warrant.

B
Having determined that the truck was located within the authorized search area, we now address the issue of whether the search of the vehicle was proper where the truck belonged to a third party, but was under the control of the property owner. As noted by Professor LaFave, supra, at 410, "the conclusion that a description of premises covers vehicles parked thereon should at least be limited to vehicles under the control of the person whose premises are described." See also Percival, 756 F.2d at 612. In the instant case, the State established that appellant had been observed operating the vehicle during the weeks prior to the search, and in the cab of the truck, personal items belonging to appellant were found in a bank bag, which contained approximately $3,500 in cash and various receipts and papers bearing appellant's name. Appellant contended that the vehicle did not belong to him and established that title to the vehicle was in the name of Mrs. Michael Medlock. Appellant did not dispute the fact of control and admitted that he used the truck "the same as I use mine." Further, Medlock testified that he allowed appellant to borrow the truck while appellant's vehicle was in Odenville for repairs. Appellant stated that he placed the bank bag and a set of scales, which belonged to him, in the truck upon leaving his vehicle in Odenville. These facts adequately demonstrate that appellant exercised dominion and control over the vehicle, to the exclusion of all others except the legitimate owners and, therefore, the search was proper.
We, therefore, hold that the search of the truck which was parked in appellant's backyard and, under his control, was expressly authorized by the search warrant and the evidence seized therein was not due to be suppressed. We find no error in the trial court's ruling on this issue.

II
Appellant next argues that the search warrant was defective because it erroneously referred to a "dirt and gravel road" leading to appellant's home as being a paved road. The officer who prepared the description stated that he considered the road "paved," although it was not paved in standard asphalt. The trial judge viewed the scene described in the warrant and overruled appellant's objection.
In Neugent v. State, 340 So.2d 55, 57 (Ala.Cr.App.), cert. denied, 340 So.2d 60 (Ala.1976), cert. denied, 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977), the following was stated:
"We have held that the description in a search warrant is sufficient if officers can, with reasonable effort, ascertain and identify the place to be searched. If a prudent officer is able to locate the property definitely and with reasonable certainty from the face of the warrant, the description is sufficient. The description must be such that any person familiar with the locality can, by inquiring, identify the premises described."
See also Luster v. State, 433 So.2d 481 (Ala.Cr.App.1983). In the instant case, the officers were familiar with the area and had no difficulty going directly to the described location. After viewing the area, the trial court overruled appellant's motion. We find the wording of the affidavit to be sufficient, and there was no error in the court's ruling.

III
Appellant next contends that the evidence offered to establish probable cause to search was inadequate to permit a nighttime search. Section 15-5-8, Code of Alabama 1975, provides, as follows:

*564 "A search warrant must be executed in the daytime unless the affidavits state positively that the property is on the person or in the place to be searched, in which case it may be executed at any time of the day or night. The issuing judge or magistrate must state in the warrant, according to the character of the affidavits, whether it is to be executed by day or at any time of the day or night."
The positive averment requirement of § 15-5-8 may be satisfied by hearsay information. Dickerson v. State, 414 So.2d 998 (Ala.Cr.App.1982). In Dickerson, we fully addressed the issue of the positive averment requirement and need not delve into that area here. Based on Dickerson, the affidavit in the instant case was clearly sufficient to meet the positive averment requirement of § 15-5-8, and the issuance of a nighttime search warrant was properly within the issuing judge's discretion.

IV
Appellant challenges the sufficiency of the State's evidence regarding appellant's constructive possession and knowledge of the presence of the contraband discovered inside his house and the truck. Appellant was neither in exclusive possession of the residence nor the truck. The residence was shared by appellant, his wife, and their young children. The truck was in appellant's physical possession, but the facts developed at trial established that he had no right to exclude the legitimate owner.
Section 20-2-80(2), provides, as follows:
"Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine or of any mixture containing cocaine, described in section 20-2-25(1), is guilty of a felony, which felony shall be known as `trafficking in cocaine.'"
In order to convict this appellant of trafficking, the State was required to prove that appellant was "knowingly in actual or constructive possession of, 28 grams or more of cocaine...." Appellant was clearly not shown to be in actual possession of the cocaine discovered on the premises. Thus, we must determine whether the prosecution offered evidence that appellant was in constructive possession.
Possession, whether actual or constructive, has the following three attributes: (1) "[A]ctual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control." Radke v. State, 52 Ala.App. 397, 398, 293 So.2d 312, 313 (1973), aff'd, 292 Ala. 290, 293 So.2d 314 (1974). "Constructive possession may be determined by weighing facts tending to support a defendant's necessary control over the substances against facts which demonstrate a lack of dominion and control." Crane v. State, 401 So.2d 148, 149 (Ala.Cr.App.), cert. denied, 401 So.2d 151 (Ala.1981). It is without question that appellant resided, with his wife and children, in the dwelling searched. Appellant acknowledged that the home belonged to him. Similarly, appellant had control of the truck to the exclusion of all save the legitimate owner. Under circumstances less indicative of ownership and control, this court stated in Sturdivant v. State, 439 So.2d 184, 186 (Ala.Cr.App.1983), the following:
"The circumstances as a whole were sufficient to convince a jury that the defendant was not just a momentary visitor in the particular apartment where the marijuana was found and that he, either singly or jointly with the other occupant, had constructive possession of the drug. Appellant's present position would be stronger, if at the time of the search by the officer, there had been evidence that the apartment was owned or rented by the other occupant, rather than appellant, but the evidence was silent on this point."
We find the evidence presented sufficient to establish that appellant was in constructive possession of the contraband found in his home and the truck, based on his actual dominion and control of the properties involved, as required by Radke.
When, as in this case, constructive possession is relied on, the State must also *565 adduce some facts or circumstances from which the jury could find beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substance. Ex parte Story, 435 So.2d 1365 (Ala.1983); Lyons v. State, 455 So.2d 295 (Ala.Cr.App. 1984); Temple v. State, 366 So.2d 740 (Ala. Cr.App.1978). Additionally, "knowledge by the accused of the presence of the controlled substances is an essential element and prerequisite to conviction for the offense of illegal possession of a controlled substance under the Alabama Controlled Substances Act." Temple, 366 So.2d at 741. See also Walker v. State, 356 So.2d 672, 674 (Ala.1977), and § 20-2-80(2). Such knowledge may, and usually is, established by circumstantial evidence. Walker v. State, 356 So.2d 674, 675 (Ala.Cr.App. 1977), cert. denied, 356 So.2d 677 (Ala. 1978).
When an accused has exclusive possession of the premises, where contraband is discovered, a logical inference arises that the accused had knowledge of the presence of the contraband. See Grubbs v. State, 462 So.2d 995 (Ala.Cr. App.1984). However, when an accused "is in possession, but not exclusive possession of premises, it may not be inferred that he knew of the presence of any controlled substance found there unless there are other circumstances tending to buttress this inference.... What is required is some evidence that connects the defendant with the contraband that is found." Temple, 366 So.2d at 743.
In the instant case, there is a rational inference that appellant had knowledge of the presence of cocaine located in the fireplace insert based on his possession of a plastic straw containing cocaine residue. "[E]vidence that debris of the contraband was found on the defendant's person or with his personal effects has been observed to be a type of circumstance which may provide a connection sufficient to infer knowledge of the presence of the contraband to the accused." Temple, 366 So.2d at 743. "When the presence of the accused at the scene is established and evidence of his knowledge of the presence of the illegal substance is showneven by circumstantial evidencealong with any other incriminating evidence, the issue of appellant's guilt should be submitted to the jury." Moore v. State, 457 So.2d 981, 986 (Ala.Cr. App.1984), cert. denied, 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985). See also Radke, supra. Appellant's connection with the cocaine discovered in the fireplace insert was properly established by his close proximity to the contraband and the straw containing cocaine residue found on his person. This evidence was sufficient to authorize the submission of the issue to the jury.
The cocaine discovered in appellant's home contained a diluting substance known as "inositol." A clear plastic bottle of inositol was discovered along with the cocaine discovered in the fireplace insert. The cocaine discovered in the truck contained a diluting substance known as "lactose." This cocaine did not contain any traces of the diluting substance known as inositol. Therefore, it cannot be inferred that the cocaine in the truck was connected to the cocaine located in the dwelling. The presence of items in the truck belonging to appellant was conclusively established and admitted by appellant. These items, a bank bag and set of scales, were located in the cab of the truck and not near the cocaine. The scales were not shown to be of a type normally used for weighing drugs. The bank bag contained money, receipts from the farming operations, and other papers bearing appellant's name; but nothing contained therein was associated with cocaine consumption or sales. The bank bag also contained a plastic bag in which .02 gram of marijuana was discovered; however, we do not view the presence of marijuana in the bank bag to be a sufficient connection to the cocaine from which knowledge of the presence of cocaine could have been reasonably inferred by the jury.
The thermos bottle in which the cocaine was hidden was found inside a half-full chicken feed sack. The State's witnesses established that no chickens were kept on appellant's property. Appellant stated he had no chickens, or other use, for chicken feed. No fingerprints were obtained *566 from the sack, thermos, or bag in which the cocaine was found. We find absolutely nothing which would provide a connection between appellant and the cocaine discovered in the truck, from which the jury could have reasonably inferred appellant's knowledge of the presence of that cocaine. The evidence was, therefore, insufficient to authorize the submission of the issue to the jury.
The cocaine, which we have held to be admissible at appellant's trial, consisted of approximately 10.532 grams located in the fireplace insert and the lesser amounts located at other places within the dwelling and on appellant's person. The total weight of admissible cocaine was less that the "28 grams or more of cocaine or any mixture containing cocaine" required to justify a conviction pursuant to § 20-2-80(2). The trafficking conviction is, therefore, due to be reversed and rendered. The jury, however, in returning a verdict of guilty on each count in the indictment, also found appellant guilty of possession of cocaine in violation of § 20-2-70. Each element of possession of cocaine as defined by § 20-2-70 was sufficiently proven to justify a conviction under that provision. We remand this cause to the trial court with instructions to set aside and vacate the conviction for trafficking and to enter a judgment of guilty on one of the two remaining counts upon which the jury returned a verdict of guilty and sentence appellant accordingly.
We have reviewed the remaining contentions raised by appellant and find that they are without merit.
Based on the foregoing, this cause is due to be reversed and rendered in part, and remanded to the trial court for further action consistent with this opinion. Due return should be made to this court upon completion of the trial court's actions.
REVERSED AND RENDERED IN PART; REMANDED WITH INSTRUCTIONS.
All the Judges concur.

ON RETURN TO REMAND
PATTERSON, Judge.
We reversed and rendered the judgment in this case finding appellant guilty of trafficking in cocaine in violation of § 20-2-80(2), and remanded the case with instructions that the trial court set aside and vacate the conviction and sentence for trafficking, enter a judgment of guilty of possession under one of the two remaining counts of the indictment, and sentence appellant accordingly.
On March 30, 1987, the trial court, in accordance with the instructions of this court, set aside and vacated the conviction and sentence for trafficking, adjudged appellant guilty of possession of cocaine under Count Two of the indictment, and sentenced him to fifteen years' imprisonment.
The return to remand has been filed and the record reflects that the trial court has fully complied with the instructions of this court. It follows that the judgment of the trial court finding appellant guilty of possession of cocaine under Count Two of the indictment, in violation of § 20-2-70, and sentencing him to fifteen years in the penitentiary is due to be, and the same is hereby, affirmed.
AFFIRMED.
All Judges concur.
NOTES
[1] See United States v. Percival, 756 F.2d 600, 612 (7th Cir.1985), which held that "a search warrant authorizing a search of particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises," relying on United States v. Bulgatz, 693 F.2d 728, 730 n. 3 (8th Cir.1982), cert. denied, 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 444 (1983); United States v. Freeman, 685 F.2d 942, 955 (5th Cir.1982); United States v. Napoli, 530 F.2d 1198, 1200 (5th Cir.), cert. denied, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976); United States v. Beall, 581 F.Supp. 1457, 1466 (D.Md.1984), aff'd, 767 F.2d 913 (4th Cir.1985). Both Freeman and Bulgatz rely on Napoli to support their holdings; and Beall relies on Bulgatz. For a synopsis of the holdings in the above cited cases, see Percival, 756 F.2d at 612.